Lise **WAGNER**, et al.

v.

**SECRETARY OF STATE**, et al.

Supreme Judicial Court of Maine.

Argued June 22, 1995.
Decided July 26, 1995.

Patricia A. Peard (orally), Bernstein, Shur, Sawyer & Nelson, Portland, Mary Bonauto, Gay & Lesbian Advocates, Boston, MA, for plaintiffs.

Stephen C. Whiting (orally), Douglas, Whiting, Denham & Rogers, Portland, for Carolyn Cosby.

Paul Stern (orally), Asst. Atty. Gen., Augusta, for G. William Diamond.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN and DANA, JJ.

CLIFFORD, Justice.

Plaintiffs Lise Wagner, James Martin, and Ruth Blackburn appeal from the entry of a summary judgment in the Superior Court (Kennebec County, *Alexander, J.*) in favor of the Secretary of State and Carolyn Cosby on their action to keep a citizen initiative off the November 1995 ballot. Contrary to the plaintiffs' contentions, we find no error with the trial court's conclusion that the initiative is not a disguised attempt to amend the Constitution and that it is not misleading, and affirm the judgment.

Concerned Maine Families (CMF) is a political action committee chaired by Carolyn Cosby. Cosby invoked the citizen-initiative right set forth in Article IV, Part 3, Section 18 of the Maine Constitution[1] by submitting proposed legislation to the Secretary of State pursuant to 21–A M.R.S.A. §§ 901–906 (1993 & Supp.1994). After the Secretary of State

---

1. Section 18 provides in pertinent part:

    **1. Petition procedure.** The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition....

    **2. Referral to electors unless enacted by the Legislature without change; number of** **signatures necessary on direct initiative petitions; dating signatures on petitions; competing measures....** The measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both.

drafted a ballot question, Cosby circulated petitions for signatures.[2] *Id.* § 901(4). In January 1995, the Secretary of State certified the initiative petition as valid and presented it to the Legislature.[3] *Id.* § 905(1).

The plaintiffs filed a three-count complaint seeking a declaratory judgment and review of final agency action against CMF and the Secretary. The complaint alleged that the initiative was an attempt to amend Maine's Constitution because it purports to give the electorate the power to limit enactment of future laws in violation of Article IV, Part 3, Section 18, and that the initiative violated the requirements of 21-A M.R.S.A. § 906(6)(A) and (6-A).

Cosby moved for a summary judgment on Counts I and II,[4] and the plaintiffs cross-moved for a summary judgment. The Superior Court granted a summary judgment in Cosby's favor. The court found that the initiative was not a disguised constitutional amendment and was a proper subject to be presented to the voters. It also held that any constitutional concerns stemming from language purporting to limit future legislative action were not ripe for review.

2. Prior to being circulated, the text of the proposed legislation and the ballot question were revised several times. The title was also revised following a challenge brought pursuant to 21-A M.R.S.A. § 905(2) by different plaintiffs. In that litigation, the Superior Court (Cumberland County, *Lipez, J.*) determined that the title needed to be redrafted to more accurately reflect the content of the proposed legislation, but that the ballot question, identical to the version at issue here, was not misleading.

3. Since the Legislature has not enacted the initiative without change, it must be referred to the electors. Me. Const. art. IV, pt. 3, § 18(2).

The ballot question, title, and text of proposed legislation read as follows:
Do you favor the changes in Maine law limiting protected classifications, in future state and local laws to race, color, sex, physical or mental disability, religion, age, ancestry, national origin, familial status, and marital status, and repealing existing laws which expand these classifications as proposed by citizen petition?
An Act to Limit Protected Classes Under Maine Law.
Be it enacted by the People of the State of Maine as follows:
5 M.R.S.A. Section 4552-A is enacted to read:

We review the grant of a summary judgment for errors of law, *Kelly v. University of Maine,* 623 A.2d 169, 171 (Me.1993), and will affirm this decision if "there is no genuine issue of material fact and the movant is entitled to a judgment as a matter of law." *Smith v. School Admin. Dist. No. 58,* 582 A.2d 247, 248 (Me.1990); M.R.Civ.P. 56(c).

## I.

Maine's Constitution affords any Maine citizen the right to propose legislative enactments. Me. Const. art. IV, pt. 3, § 18. "The broad purpose of the direct initiative is the encouragement of participatory democracy." *Allen v. Quinn,* 459 A.2d 1098, 1102 (Me.1983). Article IV, Part 3, Section 18 "must be liberally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate." *Id.* at 1102–03.

The plaintiffs argue that the initiated legislation purports to bind the lawmaking powers of future State legislatures and is therefore an attempt to amend the Constitu-

Section 4552–A. Limitation of Protected Class Status
Notwithstanding any provision of this chapter or any other provision of law, protected classes or suspect classifications under state or local human rights laws, rules, regulations, ordinances, charter provisions or policies are limited to race, color, sex, physical or mental disability, religion, age, ancestry, national origin, familial status, and marital status. Any provision of State or local law, rule, regulation, ordinance, charter provision or policy inconsistent with this section is void and unenforceable.
This section, being necessary for the welfare of the State and the inhabitants of Maine, shall be liberally construed to accomplish its purpose and is not to be interpreted or applied as a limitation or restriction on authority as enumerated in the Maine Constitution.

4. Count III was previously dismissed by the Superior Court (Kennebec County, *Crowley, J.*) as falling "within the ambit of 21-A M.R.S.A. § 905(2), which relates exclusively to the understandability of the question presented." No appeal was taken. We also note that the section 906 provisions relied on by the plaintiffs in Count III did not become effective until January 1, 1994, and thus do not apply to this initiative. *See* P.L.1993, ch. 352, §§ 3, 4, 6.

tion in direct violation of section 18. We are unpersuaded by this argument.

On its face, the proposed initiative legislation is not a constitutional amendment. It identifies itself as a statutory enactment that would be codified in Title 5 as section 4552–A. The Superior Court specifically addressed, and correctly rejected, the argument that the initiative was a disguised constitutional amendment, stating:

A reading of the actual text of the proposed legislation and proponent's concession that it could not control future action by the Legislature, only repeal existing protections, resolves plaintiffs' principal objection that the proposal is a back door attempt to amend the Constitution. On its face, it is not, it is only a statutory amendment. It usurps neither the enacting powers of the Legislature nor the interpretive powers of the judiciary.

The proposed initiative legislation does not present us with a subject matter beyond the electorate's grant of authority. *See, e.g., Opinion of the Justices,* 191 A.2d 357, 359–60 (Me.1963) (Article IX, Section 14 prevents submission of bond issue proposal to referendum until "two thirds of both houses shall deem it necessary" and there has been "proper enactment"); *Morris v. Goss,* 147 Me. 89, 93, 106–08, 83 A.2d 556 (1951) (people lack power to revoke by referendum emergency tax laws enacted by Legislature); *Moulton v. Scully,* 111 Me. 428, 449–51, 89 A. 944 (1914) (removal of public officers not proper subject for referendum since power resides solely in Legislature and Governor under Art. IX, § 5). It is thus an appropriate matter to be submitted to the voters of this State.

■ The plaintiffs nonetheless argue that the initiative would, *in effect,* be an amendment to the Constitution because it is an attempt to limit future state legislation. This argument concerns the future effect, enforceability, and constitutionality of the initiative if enacted. We agree with the Superior Court that this issue is not ripe for judicial review.

■ The declaratory judgment statute is " 'operative only in cases where a genuine controversy exists.' " *National Hearing Aid Ctrs., Inc. v. Smith,* 376 A.2d 456, 458 (Me. 1977) (citation omitted); *Berry v. Daigle,* 322 A.2d 320, 325 (Me.1974). To satisfy the controversy requirement, the case must be ripe for judicial consideration and action. *Lewiston, Greene & Monmouth Tel. Co. v. New Eng. Tel. & Tel. Co.,* 299 A.2d 895, 907–08 (Me.1973). Ripeness concerns the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration. *Maine Pub. Serv. Co. v. Public Utils. Comm'n,* 524 A.2d 1222, 1226 (Me. 1987).

In this instance, the initiative may never become effective. Thus, we are not presented with a concrete, certain, or immediate legal problem. *See National Hearing Aid Ctrs.,* 376 A.2d at 459 (issue of constitutionality of statutory provisions enacted but not yet effective was ripe for decision when statute was certain to become effective and provisions would be enforced by Department of Health); *Maine Sugar Indus., Inc. v. Maine Indus. Bldg. Auth.,* 264 A.2d 1, 5 (Me.1970) (declaratory judgment statute permitted court to address the effect of enacted but not yet effective statutory amendment). Although the plaintiffs argue that the controversy is ripe because the holding of an illegal election is immediately harmful to them, we are not persuaded. The success of this argument would require us to conclude that the proposed legislation is an amendment to the Constitution, contrary to our earlier conclusion, or that it will have the effect of amending the Constitution, an issue not yet ripe for our consideration.

■ Furthermore, even if it were to pass, the impact of the initiated legislation on other statutes and on future lawmaking is not certain. We could not, and will not, try to elaborate on the ramifications the initiated legislation might have on existing laws, because "[t]o express a view as to the future effect and application of proposed legislation would involve [us] at least indirectly in the legislative process," in violation of the separation of powers mandated by Article III, Section 2, of the Maine Constitution. *Opinion of the Justices,* 437 A.2d 597, 611 (Me. 1981). Any determinations about the consti-

tutionality of the initiative[5] if enacted would be premature at this time and more appropriately left for specific challenges in the future. *See, e.g., Maine Pub. Serv. Co. v. Public Utils. Comm'n,* 490 A.2d 1218, 1222 (Me.1985) (Commission's orders relating to utilities' participation in power plant project was ripe for review because they required specific action within prescribed time limits and were operative immediately or sure to be so following the happening of a condition).

## II.

■ The plaintiffs also contend that the initiative question is materially misleading because its promise of directing future state law cannot be fulfilled.

■ Judicial review of whether an initiative's language is misleading focuses on whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to the voter's wishes. 21–A M.R.S.A. § 905(2). A fair reading of the proposed question would not lead a voter wishing to limit the classes protected against discrimination to vote against the initiative merely because the statute cannot bind the State legislature from enacting laws in the

future. Nor would voters opposed to the initiative be misled into voting in favor of it because state lawmakers would not be constrained by its passage. Although the question may inaccurately suggest the legislation will limit the actions of future state legislatures,[6] it is not misleading within the meaning of section 905(2).[7]

The entry is:

Judgment affirmed.

All concurring.

---

5. This result comports with those reached by a majority of courts that have addressed whether they should enjoin an election based on a challenge that the proposed action is substantively unconstitutional. 42 Am.Jur.2d *Initiative and Referendum* § 48 (1969); Annotation, *Injunctive Relief Against Submission of Constitutional Amendment, Statute, Municipal Charter, or Municipal Ordinance, on Ground that Proposed Action Would be Unconstitutional,* 19 A.L.R.2d 519, 523 (1951); *see also Opinion of the Justices,* 623 A.2d 1258, 1264 (Me.1993) (answer of Glassman and Clifford, JJ.) (no inquiry into substantive constitutional validity or enforceability of bill subject to referendum should be addressed even if the bill appears unconstitutional).

6. Defendants concede that initiated legislation may not bind the hands of future state legislators but assert that it is not their intent to restrain subsequent legislatures and that the language in the proposed legislation does not do so.

7. Furthermore, the issue of whether the initiative is misleading has twice been addressed. At the

time Count III was dismissed, the plaintiffs represented to the Superior Court (*Crowley, J.*) that the understandability of the initiative was not an issue and did not raise any question regarding the use of the word "future" in the question. To the extent that the plaintiffs are now arguing about the wording of the question, they are estopped by their earlier assertions and actions before the court.

Likewise, the prior litigation concerned the understandability of the initiative and its potential to mislead voters. Although the plaintiffs were different, the interests of the instant plaintiffs were well represented. *See Normand v. Baxter State Park Auth.,* 509 A.2d 640, 645 & n. 15 (Me.1986) (collateral estoppel barred plaintiffs from relitigating issue of whether snowmobiles could ever be used in Park even though they were not parties in first lawsuit because "their interests were well represented by similar individual users of the Park."). Notions of collateral estoppel bar the plaintiffs from claiming the question is misleading when this issue was fully litigated previously and decided in the defendants' favor.