STATE OF MAINE                              SUPERIOR COURT
PISCATAQUIS, ss.                            DKT. NO. CV-18-5

GERALD S. NESSMANN in his capacity as    )
elected director of Hospital Administrative )
District No. 4, representing the interests of the )
Inhabitants of the Town of Sebec, THE    )
INHABITANTS OF THE TOWN OF               )
MONSON, and THE INHABITANTS OF           )
THE TOWN OF SEBEC, both bodies           )
corporate and politic,                   )    **ORDER GRANTING DEFENDANT'S**
                                         )    **MOTION TO DISMISS**
        Plaintiffs,                      )
                                         )
v.                                       )
                                         )
HOSPITAL ADMINISTRATIVE DISTRICT         )
NO. 4,                                   )
                                         )
        Defendant.                       )

Plaintiff Gerald Nessmann, an elected board member of Defendant Hospital

Administrative District No. 4 (HAD4) from the Town of Sebec, brought suit against HAD4

regarding its actions, inactions, and the potential outcomes pertaining to a seemingly impending

merger with Eastern Maine Health Services (now referred to as Northern Light Health). The

inhabitants of the Town of Sebec and the inhabitants of the Town of Monson joined the suit and

asserted their own claims.

As the parties are well familiar, on October 23, 2018, the Superior Court *sua sponte* granted

an *ex parte* temporary restraining order in favor of Mr. Nessmann that prevented HAD4's board

of directors from voting on the proposed merger plan on October 24, 2018. It soon became clear

that the temporary restraining order had been improvidently granted and needed to be dissolved.

The Court dissolved the temporary restraining order and directed the parties to brief whether Mr.

Nessmann's request for a preliminary injunction should be addressed or whether HAD4's Motion

to Dismiss the Complaint for a failure to state a claim should be addressed. Because the Motion

1

PISCATAQUIS JUD CTR
MAR 20 '19 PM1:51

Entered on the
Docket: 3/20/19

to Dismiss had the potential to dispose of the entire Complaint and obviate the need to address the preliminary injunction, the Court directed the parties to complete briefing on the Motion to Dismiss. Though the Court indicated it would schedule oral argument on the Motion to Dismiss, its analysis of the operative Complaint and the briefs led it to conclude that oral argument would be unnecessary; the Motion can be decided on the briefs. The Court is now in a position to render a decision on HAD4's Motion to Dismiss, which it grants as detailed more below.

## LEGAL STANDARD

A complaint can be dismissed if it "fail[s] to state a claim upon which relief can be granted . . . ." M.R. Civ. P. 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests "the legal sufficiency of the complaint"; the Court views the factual allegations in the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Carey v. Bd. of Overseers of the Bar*, 2018 ME 119, ¶ 29, 192 A.3d 589.

On a motion to dismiss for failure to state a claim, the Court generally cannot consider documents outside the pleadings without treating the motion as one for summary judgment. *See* M.R. Civ. P. 12(b); *see also Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 8, 843 A.2d 43. However, the Court can consider "official public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint . . . when the authenticity of such documents is not challenged." *Id.* ¶ 11. When the Court does consider such documents, those documents merge into the pleadings. *Id.* ¶ 10. Plaintiffs attached a number of documents to the Complaint that meet the *Moody* exception and thus merge into the pleadings.[1]

---

[1] This also includes the draft merger agreement attached to Mr. Nessmann's November 14, 2018 affidavit (filed on November 29, 2018) that supports the Plaintiffs' arguments regarding the Motion to Dismiss. This draft merger agreement is both referred to in the Complaint and central to the Plaintiffs' claims. HAD4 does not dispute its authenticity and further cites it to support lack of justiciability arguments.

## FACTUAL ALLEGATIONS

HAD4 is a quasi-municipal corporation that was established by the Maine Legislature in 1973 by Special and Private Law.[2] (Compl. ¶ 1.) Its chartering legislation has been amended several times since then. (Compl. ¶ 1.) As a quasi-municipal corporation, HAD4 is subject to the Freedom of Access Act (FOAA), which is codified at 1 M.R.S. §§ 400-414. (Compl. ¶ 10.) HAD4 owns and operates Mayo Regional Hospital in Dover-Foxcroft. (Compl. ¶ 2.) HAD4 is governed by a board of directors consisting of nineteen directors, with each Member Town electing from one to three directors. (Compl. ¶ 4.) Gerald Nessmann has been a director representing the Town of Sebec since 2011. (Compl. ¶ 5.)

Central to this case, HAD4 began investigating potential affiliation options with a number of nearby healthcare providers in 2014 and 2015. (Compl. ¶ 13.) This led to HAD4 entering into a first preliminary affiliation agreement with Eastern Maine Health Services (now Northern Light Health).[3] (Compl. ¶ 14.) The goal of this affiliation has been to merge with EMHS and amend the legislative Charter, which Plaintiffs allege would allow transfer of all HAD4 assets to EMHS without any compensation. (Compl. ¶ 33.) These assets are a key aspect of the claims in this case because EMHS was in a financially challenging situation in late 2018. (Compl. ¶ 17.) HAD4, on the other hand, enjoys a very good credit rating and has no issue with accessing funding within the limits of its Charter and general bond underwriting parameters. (Compl. ¶ 18.) Over the years, HAD4 has accumulated reserve funds which, as of September 30, 2018, totaled more than $16,000,000. (Compl. ¶ 19.) Plaintiffs contend these funds are assets of the Member Towns.

---

[2] HAD4 is comprised of the towns of Abbot, Atkinson, Bradford, Cambridge, Dexter, Dover-Foxcroft, Guilford, Milo, Monson, Parkman, Sangerville, Sebec, and Willimantic. (Compl. ¶ 3.) The Court will refer to these as the "Member Towns."

[3] The Court will refer to it as "EMHS" in this Order because that is how Mr. Nessmann referred to it in his Complaint.

(Compl. ¶ 19.) The total net equity (book assets minus book liabilities) of HAD4 as of September 30, 2018, was roughly $28,000,000, which included the reserve funds. (Compl. ¶ 20.)

During the course of negotiations with EMHS, Mr. Nessmann has articulated his concern over the alleged handing over of the reserve funds to EMHS without consideration as part of the merger. (Compl. ¶ 21.) He continued to express concerns over the process. (Compl. ¶¶ 22-32.) On August 20, 2018, Mr. Nessmann requested information from HAD4 CEO Marie Vienneau regarding a board confidentiality policy, the merger negotiations with EMHS, and the anticipated amendment to the Charter. (Compl. ¶ 34.) Including subsequent follow-ups, Mr. Nessmann has not received any of the information he requested. (Compl. ¶ 53.) As of the filing of the Complaint, none of the directors had received copies of the proposed merger plan or the proposed Charter amendment, though they subsequently received copies because Mr. Nessmann attached a draft copy to his affidavit supporting the Opposition to the Motion to Dismiss. (Compl. ¶¶ 45, 54.) Mr. Nessmann initiated this case on October 23, 2018, in an attempt to gain access to documents regarding the proposed merger and to put a halt to the proposed merger.

## DISCUSSION

The Court will address the claims in the operative Amended Complaint, filed on November 1, 2018, in two groups: those claims brought by Gerald Nessmann, in his capacity as an elected director of HAD4 representing the interests of the Inhabitants of the Town of Sebec, and those claims brought by the inhabitants of Sebec and Monson.

1. Gerald Nessmann's claims.

Count I of the Complaint seeks inspection of HAD4's corporate books and records pursuant to 13-B M.R.S. § 715 of the Nonprofit Corporation Act. (Compl. ¶¶ 56-59.) HAD4 challenged Mr. Nessmann's ability to bring such a claim because the Act expressly excludes a "political

4

subdivision or body politic and corporate of the State" from the definition of a "corporation." 13-B M.R.S. § 102(4)(C). The enabling legislative Charter designated HAD4 as a "body politic and corporate . . . ." P. & S.L. 1973, ch. 76, § 1 (emergency, effective May 11, 1973); *cf. Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 15, 769 A.2d 857 (regarding a comparable hospital administration district, concluding that a designation as a "body politic and corporate" in the enabling legislation rendered the hospital administration district a "political subdivision" for purposes of FOAA). It appears plainly that the Nonprofit Corporation Act does not apply to HAD4, and Mr. Nessmann conceded as much. (Pl.s' Opp. to Mot. Dismiss 3.) Notwithstanding this inapplicability of the Nonprofit Corporation Act, Mr. Nessmann contends he is entitled to pursue a claim for the requested documents based on his status as a director on the board representing the interests of the inhabitants of the Town of Sebec.[4]

Yet, as HAD4 elucidated on in its briefs, the harm caused by this refusal to provide access to the requested documents is not harm to Mr. Nessmann personally, but instead harm to the inhabitants of the Town of Sebec because it is their interest at stake. This reveals a further legal insufficiency in Count I: Mr. Nessmann lacks standing to assert this claim. *See Halfway House v. City of Portland*, 670 A.2d 1377, 1379 (Me. 1996) ("Standing to sue means that the party, at the commencement of the litigation, has sufficient *personal* stake in the controversy to obtain judicial resolution of that controversy." (emphasis added)). As the Law Court concluded in *Town of Burlington*, it was the town itself that was entitled to documents under FOAA. *See* 2001 ME 59, 769 A.2d 857. Because the Nonprofit Corporation Act does not apply, because the Court could

---

[4] Mr. Nessmann references a common law right to inspection of books and records in his brief. Not only did Mr. Nessmann not rely on this common law right within the claim itself, but he did not provide Maine authority on the issue. This prompted the Court to do independent research. Nonetheless, not only could the Court not find any Maine authority generally on a director's common law right of inspection, it could not find any Maine authority on the issue that would assist in the unique context of this case where Mr. Nessmann is a director on a board for a body politic and corporate of the State.

5

find no guiding authority on a common law right of inspection in this instance, and because Mr. Nessmann lacks standing to pursue this claim, it must be dismissed.

Additionally, in Count IV, Mr. Nessmann brings a claim for "conversion of public property" based on the Member Towns' assets in the reserve fund that would purportedly be given to EMHS upon completion of the merger without any benefit flowing back to the Member Towns. HAD4 raised a number of issues with this claim, including a failure to give notice pursuant to the Maine Tort Claims Act.[5] *See* 14 M.R.S. § 8107. Most fundamentally, however, is the issue that Mr. Nessmann does not have standing to assert the rights of the inhabitants of the Town of Sebec. His own statement that he was protecting the interest of his constituents (cited in footnote 5) evidences that it is the inhabitants of the Town of Sebec whose interest is at stake in the reserve fund assets, not Mr. Nessmann's. This is further highlighted by the inhabitants of the Town of Sebec, themselves, joining the complaint and bringing claims regarding the merger agreement, the Charter, and the proposed disposition of the assets in the reserve fund. (Compl. ¶¶ 82-108.)

Even more concerning about Mr. Nessmann's claim in Count IV is that the merger has not occurred yet, the Charter has not been amended by the Legislature yet, nor have the assets in the reserve fund been disposed of in the manner Mr. Nessmann asserts they will be upon completion of the merger. There appear to be a number of steps that must occur before the harm alleged in Count IV is inflicted. This strikes at the heart of whether there is a justiciable controversy for the Court to address here. *See Hathaway v. City of Portland*, 2004 ME 47, ¶ 11, 845 A.2d 1168 ("A justiciable case or controversy involves a claim of present and fixed rights, as opposed to hypothetical or future rights, asserted by one party against another who has an interest in contesting

---

[5] Mr. Nessmann contested HAD4's characterization of Count IV as a "tort" claim; he asserted that "[a]t its core, Count IV seeks injunctive relief to protect the interest of Mr. Nessmann's constituents from an action of the board . . . ." (Pl.s' Br. 5 (Nov. 14, 2018).) The claim could arguably be read to seek declaratory or injunctive relief from the Court, so the Court will consider it as such for purposes of this order.

6

the claim." (quotation marks omitted)). Declaring rights and responsibilities for a merger that may not even be completed or finalized in the form as presented to the Court now could put the Court at risk of issuing an advisory opinion. This would be improper. *See Perry v. Hartford Accident & Indem. Co.*, 481 A.2d 133, 136 (Me. 1984) (explaining that "the controversy between the parties [must be] sufficiently 'real' to avoid the constitutional prohibition against rendering advisory opinions . . . .").

Lastly, in Count II, Mr. Nessmann sought a temporary restraining order to prevent HAD4 from voting on the proposed plan of merger with EMHS on October 24, 2018. As noted in the introduction to this Order, the temporary restraining order was already granted and then dissolved. Further, even if the issue of the temporary restraining order were still ripe for adjudication now, Mr. Nessmann would have no likelihood of success on the merits because he has no remaining underlying claim upon which he could succeed. *See Bangor Historic Track, Inc. v. Dep't of Agric., Food & Rural Res.*, 2003 ME 140, ¶ 9, 837 A.2d 129 (explaining that one of the requirements to obtaining a temporary restraining order or preliminary injunction is a showing of "a likelihood of success on the merits"). For the same reason, his Count III for a preliminary injunction fails.

2. The Inhabitants of the Towns of Sebec and Monson's claims.

In Count V, Sebec and Monson ask the Court to "declare that[,] under the provisions of the Nonprofit Act[,] amending the Charter is outside the scope of authority of the HAD4 Board and that the HAD4 Board's authority is limited to propos[ing] amendments to the Charter to the Member Towns for consideration at duly called town meetings, at which meetings . . . the Member Towns have to adopt such amendments to the Charter." (Compl. 19.) Further, in Count VI, Sebec and Monson ask the Court to "declare that, under the provisions of the Nonprofit Act, entering into merger agreements is outside the scope of authority of the HAD4 Board and that the HAD4

7

Board's authority is limited to propos[ing] merger plans to the Member Towns for consideration at duly called town meetings, at which meetings . . . the Member Towns have to adopt such amendments to the Charter." (Compl. 20.) As the Court noted above, and as Mr. Nessmann conceded for his claims, the Nonprofit Corporation Act does not apply to HAD4 and cannot be a basis for these two counts. This alone could be fatal to the claims. Instead, Sebec and Monson argue Counts V and VI truly ask this Court to interpret the scope of the Board's authority under the current version of the legislative Charter. (Pl.s' Opp. Mot. Dismiss 5.) They assert that the Court is authorized to do this pursuant to the Declaratory Judgments Act. *See* 14 M.R.S. § 5954.

This raises fundamental issues regarding the justiciability of Sebec and Monson's claims. The merger has not been consummated. The Legislature has not amended the Charter. It cannot be assumed that legislative amendment of the Charter is a forgone conclusion. At best, Sebec and Monson are asking this Court to give them advisory guidance on hypothetical or uncertain outcomes, which is something this Court is constitutionally prohibited from doing. *See* Me. Const. art. VI, § 3 (permitting only "[t]he Justices of the Supreme Judicial Court . . . to give their opinion upon important questions of law, and upon solemn occasions, when required by the Governor, Senate or House of Representatives"); *Annable v. Bd. of Envtl. Prot.*, 507 A.2d 592, 595 (Me. 1986) (explaining that "maintenance of a declaratory judgment action [requires] the presence of a justiciable controversy," one that "must involve presently existing and specific facts, as opposed to hypothetical or uncertain facts"). HAD4 helpfully directed the Court to an analogous case.

In *Wagner v. Secretary of State*, the plaintiffs sought a declaration that a yet-to-be-enacted citizen initiative violated the Maine Constitution and state statutes. 663 A.2d 564, 566 (Me. 1995). The Law Court noted that the plaintiffs were really seeking a declaration regarding the "future effect, enforceability, and constitutionality of the initiative *if enacted.*" *Id.* at 567 (emphasis

8

added). Because "the initiative [might] never become effective," the Law Court was "not presented with a concrete, certain, or immediate legal problem." *Id.* Similarly, here, Sebec and Monson are asking the Court for a declaration regarding the interplay between the Board consenting to the merger and the legislative Charter. First, one of the conditions precedent to the consummation of the merger in the draft merger agreement is legislative amendment of the Charter, which means that the Court would be making a proclamation regarding a merger that has not occurred. (Nessmann Aff., Ex. 1, §§ 7.11, 8.8, 9.18, 11(a)(vii) (Nov. 14, 2018).) Second, if the merger is completed and the Charter amendment passes the Legislature, the Board's authority to agree to the merger under the legislatively enacted Charter amendment may be different than its authority under the current version of the Charter. The Court cannot make a declaration one way or the other at the present time, however. Thus, Sebec and Monson's claims in Counts V and VI are not ripe for adjudication and must be dismissed, which means that the requests for injunctive relief in Counts VII and VIII have no independent legal underpinning and must also be dismissed.

## CONCLUSION

In sum, the operative version of the Complaint presents no justiciable controversy for the Court to adjudicate. Accordingly, HAD4's Motion to Dismiss is granted. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 3/20/19

Hon. William R. Anderson
Justice, Maine Superior Court

9