STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss                                      CIVIL ACTION
                                                    DOCKET NO. CV-20-206


AVANGRID NETWORKS INC.,
et al.,

              Plaintiffs

v.                                                  ORDER


SECRETARY OF STATE, et al.,

REC'D CUMB CLERKS OFC
JUN 29 '20 AM11:04

              Defendants


Before the court is an action by plaintiff Avangrid Networks Inc. to enjoin the Secretary of

State from placing a citizen initiative to reject the New England Clean Energy Connect

Transmission Project on the November 3, 2020 ballot.

Avangrid is joined in its effort to enjoin the initiative by plaintiff-intervenors Maine State

Chamber of Commerce (the "Chamber") and Industrial Energy Consumer Group (IECG).

Plaintiffs argue that the initiative should be excluded from the ballot because it is not a valid

exercise of legislative authority and because, if enacted, it would violate the separation of powers

and the special legislation clauses of the Maine Constitution.

The remaining parties to this action, in addition to the Secretary, are defendant-intervenors

Nextera Energy Resources LLC, Mainers for Local Power, and nine Maine citizens.[1]

The Secretary agrees with plaintiffs that the initiative is not a permissible exercise of

legislative power and would, if enacted, violate the separation of powers. The Secretary also

---

[1] The nine citizens all state that they wish to vote for the citizen initiative at the November election. The same attorneys represent both the nine citizens and Mainers for Local Power (collectively referred to in this order as "MLP").

agrees that the issue of whether the initiative is a permissible exercise of legislative power is ripe for adjudication. However, the Secretary opposes plaintiffs' request for injunctive relief excluding the proposed initiative from the ballot.

Defendant-intervenors MLP and Nextera argue that, once the requisite signatures have been obtained, the Maine Constitution requires that the initiative be submitted to the voters and that plaintiffs' constitutional challenges to the proposed initiative legislation are not ripe for judicial review.[2] If the court reaches the merits, MLP argues that all of the plaintiffs' challenges to the validity of the proposed legislation should be rejected.

With the agreement of the parties, the hearing on Avangrid's motion for a preliminary injunction was consolidated with the trial on the merits. The parties agree that the relevant facts are those set forth below with respect to the project, the citizen initiative, and the prior proceedings before the Public Utilities Commission and the Law Court. Finally, the parties also agree that there are no disputed factual issues and that all of the issues before the court are questions of law.

The availability of pre-election review and the issue of ripeness have been briefed by all parties, and MLP has also filed a motion to dismiss on those issues. Since the court would dismiss if pre-election review were not available or the issues were not ripe regardless of whether a motion had been filed, it will not separately consider MLP's motion to dismiss.

---

[2] In their briefs MLP and Nextera also argued in the alternative that plaintiffs' challenge is untimely because judicial review would not be completed within 100 days of the filing of the petitions. *See* Me. Const. Art. IV, Pt. 3 § 22. However, that deadline applies to a determination of the validity of the written petitions – not to the validity of the proposed initiative legislation. MLP and Nextera did not pursue their untimeliness defense at the oral argument held in this case on June 24, 2020.

The Project

The New England Clean Energy Connect Transmission Project is a proposal to run a 145.3-mile transmission line from the Maine-Québec border in Beattie Township through western Maine to a converter station in Lewiston in order to transmit 1,200 megawatts of hydroelectric power from Québec to Massachusetts. Avangrid is the parent company of Central Maine Power (CMP) and the developer of the project.

The construction of the project is subject to approvals from a number of state and federal agencies and municipal governments. The regulatory approval at issue in this proceeding is a Certificate of Public Convenience and Necessity issued by Maine's Public Utilities Commission (PUC) and affirmed by the Law Court. *Nextera Energy Resources, LLC v. Maine Public Utilities Commission,* 2020 ME 34. The Law Court's opinion recites that the proceedings before the PUC took 19 months involving more than 20 intervenors, three public witness hearings, and six evidentiary hearings. 2020 ME 34 ¶¶ 3, 6-7.

In its 100-page order issued May 3, 2019 in Docket No. 2017-00232 the PUC approved CMP's petition for a certificate of public convenience and necessity, concluding that that the Project met the statutory public need standard and that it was in the public interest. 2020 ME 34 ¶ 10.[3]

Nextera, which had intervened in the PUC proceeding, appealed the PUC order to the Law Court, which affirmed the PUC's decision on March 17, 2020. The Law Court held that the PUC had reasonably interpreted the public need standard under 35-A M.R.S. § 3132 in granting the certificate of public need. 2020 ME 34 ¶ 22-27. It concluded that the PUC had followed the proper

---

[3] The Commission also approved a stipulation reached by certain of the parties requiring the project to provide certain benefits to Maine ratepayers and to the State as a condition of approval. *Id.; see* 2020 ME 34 ¶ 8. A copy of the PUC order is annexed to Avangrid's complaint.

3

procedure, that there was sufficient evidence in the record to support its findings, and that it had reasonably interpreted the relevant statutory mandates in arriving at its decision to grant the certificate of public convenience and necessity. *Id.* ¶ 43.

The Citizen Initiative

Subsequent to the PUC's approval of the project, opponents of the project commenced a citizen initiative to overturn the PUC decision. The initiative proposed the adoption of a legislative resolve directing the PUC to amend its May 3, 2019 order, to find instead that the project was not in the public interest and that there was not a public need for the project, and to deny the requested certificate of public convenience and necessity. The full text of the proposed resolve is as follows:

> **Sec. 1. Amend order. Resolved:** That within 30 days of the effective date of this resolve and pursuant to its authority under the Maine Revised Statutes, Title 35-A section 1321, the Public Utilities Commission shall amend "Order Granting Public Convenience and Necessity and Approving Stipulation," entered by the Public Utilities Commission on May 3, 2019 in Docket No. 2017-00232 for the New England Clean Energy Connect transmission project, referred to in this resolve as "the NECEC transmission project." The amended order must find that the construction and operation of the NECEC transmission project are not in the public interest and that there is not a public need for the NECEC transmission project. There not being a public need, the amended order must deny the request for a certificate of public convenience and necessity for the NECEC transmission project.

On February 3, 2020 proponents of the initiative filed petitions bearing 82,449 signatures. The subsequent procedural history of the initiative is set forth in the Law Court's opinion in *Reed v. Secretary of State,* 2020 ME 57. On March 4, 2020, the Secretary invalidated 12,735 signatures and because 69,714 signatures remained – more than the 63,067 required – declared the initiative petitions to be valid pursuant to 21-A M.R.S. § 905(1). 2020 ME 57 ¶ 7.

4

An appeal from the Secretary's March 4, 2020 decision was brought by Delbert Reed, who contended that the Secretary should have invalidated additional signatures. After a remand to the Secretary and further proceedings outlined in the Law Court's opinion, 2020 ME 57 ¶¶ 8-10, the Secretary invalidated an additional 3,597 signatures but concluded that there were still enough valid signatures to put the initiative on the ballot. The Secretary's amended decision was upheld by the Business and Consumer Court and an appeal was then taken to the Law Court. On May 7, 2020 the Law Court affirmed the Secretary's amended decision validating the initiative petition. 2020 ME 57 ¶ 1.

Article IV, Pt. 3, § 18(2) provides that if enough valid signatures are obtained, the proposed legislation shall be submitted to the voters "unless enacted without change by the Legislature at the session at which it is presented." The Secretary had presented the initiated legislation to the Legislature on March 16, 2020. The following day the Legislature adjourned *sine die* because of the Covid-19 pandemic.[4]

Avangrid filed this action on May 12, 2020. The Parties thereafter agreed to an accelerated briefing schedule with oral argument on June 24. The court undertook to issue a decision by June 29 if at all possible to allow an expedited appeal to the Law Court before the date on which it will be too late to make any changes to the ballot.

---

[4] House Advance Journal and Calendar, Supplement 10 (Mar. 17. 2020). According to the Maine Legislature website, the proposed initiative has been carried over to any special session of the 129th Legislature. https://legislature.maine.gov/LawMakerWeb/dockets.asp?ID=280077119

5

<u>Pre-Election Review</u>

The threshold issue in this case is whether the court can undertake pre-election review of plaintiffs' challenge to the initiative. Although the parties have generally categorized this as a ripeness issue, the issue is broader than ripeness. Ripeness is a prudential doctrine, but there is an additional issue of whether, under the circumstances of this case, pre-election review is available as a matter of law.

Plaintiffs acknowledge that Maine generally follows the majority rule that pre-election challenges to the substantive validity of a citizen initiative are not ripe.[5] However, they argue that there are exceptions to this rule and that the Law Court's decision in *Wagner v. Secretary of State*, 663 A.2d 564 (Me. 1995), allows the court to consider whether the proposed initiative legislation involves "a subject matter beyond the electorate's grant of authority." 663 A.2d at 567. Specifically, plaintiffs contend that the proposed initiative is not within the electorate's legislative authority because it is limited to overturning a single agency decision that has been affirmed by the Law Court without establishing any new rule or any generally applicable criteria for certificates of public need or transmission projects.

This would, according to plaintiffs, violate the separation of powers if attempted by the legislature and should therefore not be presented to the voters. Plaintiffs further argue that the electorate should not be presented with proposed initiative legislation that would be found invalid if enacted, potentially leading to voter confusion, frustration, and loss of confidence in the democratic process.

---

[5] Although the parties have cited numerous decisions from other jurisdictions, those decisions ultimately turn on the specific constitutional provisions of each jurisdiction and the jurisprudence that has developed around those provisions. This court is bound by the provisions of the Maine Constitution and the Law Court's interpretation of those provisions and will generally confine itself to Maine precedent.

6

However, the wording of the Maine Constitution and prior opinions expressed by members of the Supreme Judicial Court indicate that pre-election review is not available to consider challenges to the validity of proposed initiative legislation if it were to be enacted. Article IV, Pt. 3 § 18(2) of the Maine Constitution states that the legislation proposed by initiative, unless enacted without change by the Legislature, "shall be submitted to the electors" (emphasis added). On several occasions Justices of the Supreme Judicial Court have expressed the view that this requires placement of an initiative on the ballot regardless of whether the proposed initiative legislation would be unconstitutional if enacted.

This was the unanimous view expressed in a 1996 opinion of the justices even though the justices disagreed on other issues. *See Opinion of the Justices*, 673 A.2d 693, 697 (Me. 1996) (opinion of Justices Wathen, Roberts, Rudman, and Dana); *id.* at 698 (dissenting opinion of Justices Glassman, Clifford, and Lipez). The same view was expressed by three Justices in a 2004 opinion. *Opinion of the Justices*, 2004 ME 54 ¶ 37, 850 A.2d 1145 (answer of Justices Clifford, Rudman, and Alexander). Although the court recognizes that opinions of the justices issued under Art. VI § 3 do not constitute binding precedent, they are entitled to respectful consideration.

Those opinions are consistent with the principle that the purpose of the direct initiative is the encouragement of participatory democracy and that Art. IV, Pt. 3 § 18 "must be liberally construed to facilitate, rather than handicap, the people's exercise of their sovereign power to legislate". *Allen v. Quinn*, 459 A.2d 1098, 1102-03 (Me. 1983). Those opinions are also consistent with *Wagner*, which quotes the above language from *Allen v. Quinn* and further states that "any determinations about the constitutionality of the initiative if enacted would be premature at this time." 663 A.2d at 566, 567-68. *Accord, Lockman v. Secretary of State*, 684 A.2d 415, 420 (Me.

7

1996) (determinations about the constitutionality of initiative would be premature and more appropriately left for specific challenges if the initiative is approved).

*Wagner* does appear to allow limited scrutiny of whether an initiative or referendum involves a subject matter beyond the exercise of the people's legislative authority. However, none of the examples it lists involve claims of substantive invalidity. Rather they involve instances where procedures specified in the Constitution are directly inconsistent with the procedure for initiative or referendum. *See* 663 A.2d at 567. One such instance is the issuance of bonds, which cannot be done by direct initiative because Art. IX § 14 requires a 2/3 vote of both houses of the legislature before submission of bond issues to the voters. *Opinion of the Justices,* 159 Me. 209, 214-15, 191 A.2d 357, 359-60 (1963).

Another is that, because the people's veto under Art. IV, Pt. 3 § 17(1) may be exercised only with respect to legislation that has been passed but has not yet taken effect, the people's veto does not apply to emergency legislation that is effective immediately once approved by the Governor. *Morris v. Goss,* 147 Me. 89, 92, 83 A.2d 556, 558 (1951).[6] A third such instance is the Legislature's power to remove state officers by impeachment or address under Art. IX § 5, which is separate from the legislative authority contained in Art. IV and therefore not subject to initiative or referendum. *Moulton v. Scully,* 111 Me. 428, 447-51, 89 A. 944, 953-55 (1914).

Finally, there is the issue presented in *Wagner* itself: whether the proposed initiative is an attempt to amend the Constitution, a procedure expressly excluded from direct initiative in Art. IV, Pt. 3 § 18. However, once the Law Court in *Wagner* reviewed the language of the proposed initiative legislation and concluded that it was not a disguised constitutional amendment, it ruled

---

[6] Thus, unlike non-emergency legislation, which may be suspended pursuant to Art. IV Pt. 3 § 17(2) to await the outcome of a vote on a people's veto petition, emergency legislation cannot be stayed to await the outcome of a referendum. Emergency legislation can, however, be repealed by direct initiative. *See* Art. IV Pt. 3 § 18(1).

that any determinations about the constitutionality of the proposed legislation would be premature. 663 A.2d at 567.

This case does not present an instance where a procedure specified in the Constitution is inconsistent with the use of the initiative process. What remains are plaintiffs' substantive challenges, which under *Wagner* are not ripe for review because the initiative might not pass and might never become effective. 663 A.2d at 567.[7]

Plaintiffs note that in *Friends of Congress Square Park v. City of Portland*, 2014 ME 63 ¶¶ 10-14, 91 A.3d 601, the Law Court analyzed whether proposed initiative legislation was "legislative" as opposed to "administrative" in determining whether a municipal initiative procedure could be invoked. Under that analysis, plaintiffs argue, the proposed reversal of the PUC decision with respect to the Project is administrative rather than legislative and therefore not a proper exercise of the citizens' authority to legislate by direct initiative.

The "legislative/administrative" distinction has frequently been applied in other jurisdictions considering municipal or county initiatives. It does not, in the court's view, apply to the question of whether a citizens initiative under the Maine Constitution that has obtained the necessary signatures is entitled to be placed on the ballot. The power of citizens to legislate by direct initiative is coextensive with the power of the Legislature – "the full power to make and establish all reasonable regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States." Art. IV, Pt. 3 § 1. Legislation is

---

[7] This appears to be consistent with the approach taken by Professors Gordon and Magleby in *Pre-Election Judicial Review of Initiatives and Referendums*, 64 Notre Dame L. Rev. 298, 317 (1989). They suggest that constitutional provisions excluding certain subjects from the initiative process should be upheld but that challenges based on substantive invalidity should be deferred until after the initiative has been voted on.

invalid if it is repugnant to the Constitution, but it has never been invalidated on the ground that the action taken by the legislature was "administrative" rather than "legislative."

There is language in an 1825 Law Court decision characterizing legislation as general and prospective in nature. *Lewis v. Webb*, 3 Me. 326, 333 (1825). However, the statute in that case was not held invalid because it was not general and prospective but because it sought to reopen a final judgment rendered by the probate court. *Id.* at 332 ("can the legislature, by a mere resolve, set aside a judgment or decree of a Judicial Court, and render it null and void? This is an exercise of power . . . purely judicial in its nature"). As counsel for Avangrid conceded at oral argument, Avangrid's argument that the proposed initiative is not a proper exercise of legislative power merges with its claim that, if enacted, the initiative would violate the separation of powers. This is a substantive challenge to the validity of the initiative and must be deferred until after the election.[8]

In ruling that this claim cannot constitute a basis for excluding the proposed initiative from the ballot, the court does not mean to suggest that plaintiffs have not raised a significant separation of powers issue. Article III § 1 of the Maine Constitution provides that the powers of Maine government shall be divided into "three distinct departments, the legislative, executive, and judicial," and Article III § 2 prohibits any of the three departments from exercising the powers delegated to either of the other departments.

Plaintiffs point out that the sole object and effect of the proposed legislation, if enacted, would be to overturn a single agency order, contrary to the findings made by that agency, as well as the Law Court's affirmance of that order. They note in *Lewis v. Webb*, as discussed above, the

---

[8] Although the Secretary argues that pre-election review in this case is supported by the Supreme Court of Washington's decision in *Coppernoll v. Reed*, 119 P.3d 318, 324-25 (Wash. 2005), the *Coppernoll* decision rejected a pre-election challenge to a citizen initiative based on an alleged violation of separation of powers.

10

Law Court ruled that the separation of powers prohibits the Legislature from setting aside final judgments rendered by the courts. *Accord, State v. L.V.I. Group,* 1997 ME 25 ¶ 11 n.4, 690 A.2d 960.

Plaintiffs also note that the separation of powers doctrine has been applied to prohibit legislative interference in the outcome of administrative proceedings. In *Grubb v. S.D. Warren Co.,* 2003 ME 139, 837 A.2d 117, the Law Court held that a subsequent legislative change could not change the result of a previous decision rendered by a hearing officer of the Workers Compensation Board even though the legislation stated that it applied retroactively and was applicable "notwithstanding any adverse order or decree."[9]

These arguments are sufficient to convince the Secretary of State to agree with the plaintiffs that, if enacted, the proposed legislation would violate the separation of powers. Plaintiffs further argue that the proposed initiative would set a harmful precedent that businesses could not rely on approvals obtained after extensive administrative proceedings without the prospect of being subjected to the reopening and reversal at the polls.

On the last point MLP's answer is that the people, in retaking the right to exercise legislative power by adding the direct initiative provision in Article IV, Pt. 3 § 18, created an avenue for the exercise of participatory democracy that necessarily has the potential to circumvent expectations under existing law.

On the merits MLP does not disagree that, if the proposed legislation would be invalid if enacted by the Legislature, it would also be invalid if enacted by citizen initiative. MLP notes, however, that citizen initiatives are entitled to the same presumption of constitutionality as

---

[9] *See* 2003 ME 139 ¶ 4 n.2. The Law Court stated, "The Legislature may not disturb a decision rendered in a previous action, as to the parties to that action; to do so would violate the doctrine of separation of powers." 2003 ME 139 ¶ 11.

11

legislative enactments. *League of Women Voters v. Secretary of State,* 683 A.2d 769, 771 (Me. 1996). It argues that the proposed initiative legislation does not reverse the Law Court's *Nextera* decision because that decision only concluded that the PUC had reasonably interpreted the governing statutes and that there was sufficient evidence to support its decision – it did not rule that the PUC could not have arrived at a different result.

MLP cites the Law Court's statements in *Auburn Water District v. Public Utilities Commission,* 156 Me. 222, 163 A.2d 743 (1960), that the regulation of public utilities "is a function of the Legislature" and that although the Legislature has delegated that function to the PUC, "it may limit the power of its agent, the Commission, if it so pleases." 156 Me. at 225, 227, 163 A.2d at 744-45. The *Auburn Water District* case did not involve a statute that the Legislature enacted to overturn a prior PUC decision, but MLP argues that the Legislature would have the authority to take such action because, as stated in *Verizon New England v. Public Utilities Commission,* the Commission "has broad authority to rescind, alter, or amend any order it had made." 2005 ME 16 ¶ 11, 866 A.2d 844, citing 35-A M.R.S. § 1321.

The parties have presented further arguments in support of their respective positions, but the foregoing is sufficient to demonstrate that the separation of powers issue is a question deserving of serious consideration. Given that the proposed legislation has not been presented to the voters and that it may or may not be enacted, the court believes that any answer it might make to that question would resemble an advisory opinion. This supports the conclusion that, under Article IV Pt. 3 § 18(1) and *Wagner,* plaintiffs' substantive challenges to the validity of the proposed initiative may not be reviewed at this time and must be reserved for future litigation if the proposed initiative is enacted.

12

The entry shall be:

Because pre-election review of plaintiffs' substantive challenges to the proposed initiative is not available, the complaint is dismissed. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June 29, 2020

Thomas D. Warren
Justice, Superior Court

**Entered on the Docket:** 06/29/20.

— Plaintiff–John Aromando, Esq.
— Defendant–Phyllis Gardiner AAG/
   Thomas Knowlton, AAG
— Int. ME State Chamber–Gerald Petruccelli, Esq.
— Int. Industrial Energy Consumer Group–Sigmund
   Schutz, Esq.
— Int. NextEra Energy–Christopher Roach, Esq.
— Int. Mainer for Local Power and Int. Maine
   Voters–David Kallin, Esq.

13