### JANE DAY *vs.* AMOS BISHOP.

### Aroostook.    Opinion April 6, 1880.

*Rights of a married woman prior to March 22, 1844, in real estate.*
*Title under the treaty of Washington.*

A woman who was married before March 22, 1844, cannot, while her husband lives, sustain an action against his grantees for land by him conveyed, even though she should show a title in fee in herself.

By a marriage previous to that date the husband acquired a freehold in her land and a right to the rents and profits of the same during their joint lives, and, in case of living issue, an estate for his own life if he survived her; all which would pass to his grantees by his conveyance.

Where the demandant claims title, by having acquired, as of her own property and estate, the rights of the party, who was in possession six years prior to the treaty of August 9, 1842, between the United States and Great Britain, the evidence must show the connection between her title and the party thus in possession; and the claim cannot be sustained upon loose, vague and uncertain testimony.

ON REPORT.

WRIT OF ENTRY, dated February 8, 1878, wherein the plaintiff demands certain real estate situated in Fort Fairfield. The facts sufficiently appear in the opinion. The law court to decide what judgment shall be entered thereupon.

*L. R. King*, for the plaintiff.

*Powers & Powers*, for the defendant.

BARROWS, J. The tenant's title which the demandant proposes to overcome is derived from a conveyance in mortgage with warranty, covering the demanded premises with other land, given

by the demandant's husband, August 19, 1854, which it is admitted was duly assigned to one Washington Long and by him foreclosed. It is supplemented by another warranty deed, given by demandant's husband, while in possession of the premises, to said Long, July 28, 1862. Upon this title said Long had judgment for possession against the demandant's husband in 1868, and subsequently took possession under said judgment, and conveyed to the defendant's wife under whom he justifies, in 1877.

Lot 15, which includes the demanded premises, was assigned to the demandant's husband by the commissioners appointed under a resolve of the legislature having the force of law, c. 133, 1854, to examine all claims under the treaty of Washington, by reason of possession and improvement of lands lying within the township granted to the town of Plymouth, and report to the Governor and Council the names of parties holding such possession at the time of the treaty, and of the present claimants, with the value of improvements and other matters of no importance in the present inquiry. The report of the commissioners, which is made part of the case, and which, looking at the authority by and the circumstances under which it was made, we regard as a public document, entitled to be considered as competent legal evidence of the matters and things therein contained, shows that they set out to William Day (who is the husband of the demandant), as claimant thereof by virtue of possession and improvement as aforesaid, Lot 15 containing 82.65 acres, and that William Day was the person in possession thereof August 9, 1842, the date of the treaty. William Day, called by the demandant, testifies, on cross examination, that he built the house on the premises. The demandant, on cross examination testifies that she knew when the commissioners went there to settle the rights of the settlers, and that her husband went before them, and claimed Lot 15—that she herself did not go near them; though she says she supposed it was run out to her because she says she bought it and paid for it.

The clear and satisfactory proof of a superior title in the wife, which is necessary to overcome that of those who under such circumstances derive their title from the husband is wanting. She

produces no conveyance to herself of any part of the premises, nor any evidence of an occupation by herself independent of her husband. She produces no testimony tending to show that she had means, independent of him, to purchase what she says she bought.

I. The testimony goes to show that she was married before the act of March 22, 1844, (which was the first statutory innovation in this State upon the common law doctrines respecting the rights of married women in property,) took effect. Her witness, John Twaddle, says he gave Mrs. Jane Day a narrow strip of land, not measured, on the upper side of the Lot, in the fall of 1842. It would seem to have been nothing but a verbal gift, made at a time when, according to the commissioners' report, William Day, the husband, was in possession of the lot. But suppose it were proved that demandant had a title in fee to this strip and the rest of the demanded premises, she could not maintain this action against the grantees of her husband while he lives, because by the marriage prior to March 22, 1844, he would have acquired a freehold in her lands (and a right to the rents and profits of the same, during their joint lives at all events), which might, by possibility, last during his life if he survived her —an estate which he could lawfully convey, and which was made by law, subject to be taken in execution for his debts. The rights of the husband in the wife's estate acquired by a marriage contracted before March 22, 1844, are not affected by the statute then passed, R. S., c. 61, § 2. This action cannot be maintained; for the demandant's husband is still living and the tenant has his title.

II. But we think there is a more radical defect in the demandant's title. She claims that the provision in Article iv, of what is called in the case and in some of our legislative resolves, the treaty of Washington, inures to her benefit and gives her a right superior to that of her husband, who was the party found by the commissioners to be the person entitled to whatever rights that article in the treaty might confer upon actual settlers. It is necessary for her to show that she and not her husband had somehow legally acquired the rights of those whom the treaty recognizes as having claims which the government was bound by the treaty to respect.

Two classes of claims to land, it was agreed by the high contracting parties in Article IV, of the treaty between the United States and Great Britain, dated August 9, 1842, should be "held valid, ratified, and confirmed": 1. Those of persons in possession under grants previously made by either party within the limits of the territory which by the treaty should fall within the dominions of the other party; and such a claim was recognized as valid and superior to an earlier grant from the commonwealth of Massachusetts in *Little* v. *Watson*, 32 Maine, 214; 2. "All equitable possessory claims arising from a possession and improvement of any lot or parcel of land by the person actually in possession, or by those under whom such person claims for more than six years before the date of the treaty." The demandant fails to present the evidence that she claims under such person. The testimony she produces besides being of the vaguest and most uncertain sort does not show the necessary connection with the claim of any such person as is referred to in the treaty.

John Twaddle says he bought of Brainard Guigey a claim which included what is now known as Lot 15. But there is nothing to show whether Brainard Guigny, or those under whom he claimed had been in possession six years before the date of the treaty. Moreover Twaddle's statement of the extent of his donation to Mrs. Day is so indefinite, that it would be impossible to found a judgment for possession upon it. Twaddle says he sold a piece next adjoining this donation strip to Samuel Farley, in the fall of 1845; that Farley occupied it about two years and died; and then his brother Ezekiel Farley moved on to it and occupied it about two years. "Then William Day occupied it next after Farley." Thus far no evidence of any written conveyance whatever, and no evidence of even a verbal assignment or transfer of possession from Samuel Farley to Ezekiel.

The demandant produces a fragment of a deed, never recorded, and bearing nothing upon it to indicate to whom it was given or what it embraced, which, of itself shows nothing, in fact, except that it appears to be the concluding portion of a quitclaim deed executed by Ezekiel Farley to somebody, August 18, 1849, and acknowledged before a magistrate who is not produced nor his

absence accounted for. The widow of Farley is produced, and she professes to recognize her husband's mark, doubtless believes that it is his genuine signature; but we cannot deem her testimony as to the contents of a deed which she never saw but once, twenty-seven years before, at Mrs. Day's, after she had herself removed from the neighborhood, and so far as appears had no occasion to examine the deed or charge her memory with its contents, as very reliable. Upon the whole this fragment of a deed, together with the testimony as to the consideration paid for it, a horse and fifteen bushels of buckwheat, makes quite as strongly in favor of William Day's title as it does in favor of that of the demandant.

But there is no evidence that Ezekiel Farley had any of the rights of a person in possession at the date of the treaty. His widow says he had no deed of it—that Samuel Farley occupied it before her husband, and John Twaddle before Samuel Farley, and Frederick (not Brainard) Guigey before Twaddle—that Frederick Guigey lived on it, and "must have been there about two years before I moved there." This witness' testimony fixes the date of her moving into the neighborhood in 1837; and if she had good foundations for her conclusion that Frederick Guigey must have been there about two years before she went there, Frederick and his grantees would appear to have the claim referred to in the treaty. The witness only says he "might have transferred it to his brother and his brother to Twaddle." We cannot sustain the demandant's claim upon such loose and uncertain testimony.

It is not necessary to determine whether the assignment by the commissioners ought to be deemed conclusive, as to the person who is entitled to the possessory claim under the treaty.

*Judgment for the defendant.*

APPLETON, C. J., DANFORTH, VIRGIN, PETERS and SYMONDS, JJ., concurred.