AUBURN WATER DISTRICT
*vs.*
PUBLIC UTILITIES COMMISSION ET AL.

Kennebec.    Opinion, July 6, 1960.

*Frank W. Linnell,*
*Paul Choate,*
*G. Curtis Webber,* for the Water District.

*Peter Kyros,* for the Commission.

SITTING: WILLIAMSON, C. J., TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ. WEBBER, J., did not sit.

WILLIAMSON, C. J. This is a petition in equity under R. S., c. 44, § 69, by the Auburn Water District to review a decision of the Public Utilities Commission denying approval of rates established by the trustees. The Commission denied the petition on the ground that the annual water rate of the City of Auburn and the 30 year limitation on the life of the bonds of the District, both fixed by statute, make it impossible for the Commission to perform its duty to set reasonable rates.

The District and the Commission agree that the sole questions concern the city water rate and the limitation on the life of the bonds. There is no disagreement upon the facts. At oral argument counsel for both parties advised the court that it would be unnecessary for the court to examine the testimony taken before the Commission, as only issues of law are here raised.

The Auburn Water District, a quasi municipal corporation of the type well known throughout Maine, was granted a charter by the Legislature in 1923 (P. & S. L., 1923, c. 60,

"An Act to Incorporate the Auburn Water District"). The charter provides "All the territory and people constituting the city of Auburn except that portion of said city and the people therein within (certain boundaries) shall constitute a public municipal corporation. . ." (§ 1). The public water facilities at that time owned by the city were transferred to the new district. (§ 2.)

As consideration for the transfer, the district assumed the indebtedness and liability incurred by the City of Auburn and the Auburn Water Commissioners. Section 3 continues

"As further consideration for the transfer and conveyance of the property and rights described in the foregoing section, the amount which the city of Auburn shall be required to pay to said Auburn Water District for water for all municipal purposes is hereby limited and fixed at the sum of three thousand dollars per year."

Other pertinent provisions of the charter are as follows:

"Every issue of bonds shall be payable within a term of thirty years." (§ 13.)

"Sec. 14. Bonds, how payable; sinking fund may be created. Bonds issued by said Auburn Water District under authority of this act shall be payable in such annual installments as will extinguish each issue in thirty years from its date; and the amount of such annual installment in any year shall not be less than the amount of the principal of said issue payable in any subsequent year; or in lieu of such provision for serial payments, said Auburn Water District shall create a sinking fund by setting aside annually from its income such amount as shall be sufficient with interest accumulations to extinguish and pay at maturity any issue of bonds which contain no provision for serial payment as aforesaid. The money so set aside shall be devoted to the purchase or retirement of the obligations of said district, or invested in se-

curities legal for savings banks in the state of Maine.

"**Sec. 15. Property exempt from taxation.** The property, rights and franchises of said district shall be forever exempt from taxation.

"**Sec. 16. Rates, how established and paid.** All individuals, firms and corporations, other than the city of Auburn, shall pay to the district the rates established by the board of trustees for the service and water used by them. Said rates shall be uniform within the territory supplied by the district and subject to the approval of the public utilities commission."

The Commission, in finding that the $3,000 water rate paid by the City of Auburn was not just and reasonable, said:

"Obviously, a 1923 charge relating to conditions as existed at that time cannot be considered adequate or equitable at the present time."

It is not necessary, as we have seen, to consider the factual situation. The issue is not whether the charge to the city in itself is just and reasonable. In discussion of this issue of law, it is sufficient to note that the Commission has declined to act upon the request of the District because of the inclusion of the city water rate fixed by the 1923 Legislature. The question then arises whether the Commission is bound to accept the charge or rate so fixed and then to proceed to determine whether the rates established by the trustees of the District should be approved.

It is well understood that the regulation of public utilities is a function of the Legislature. The regulation of public utilities lies with the Legislature and not with the Executive or Judiciary. The Public Utilities Commission, established under Laws 1913, c. 129, was given jurisdiction of all public utilities unless the Legislature plainly indicated otherwise. The Legislature thus placed in the hands of its

agents, namely, the Commission, broad powers of regulation and control of public utilities. The power of the Legislature was not, however, surrendered, but delegated. The Commission has no life except as life is given by the Legislature.

The Commission in refusing to act relies heavily upon the leading cases of *Guilford Water Company,* 118 Me. 367, 108 A. 446; *Searsport Water Co. & Lincoln Water Co.,* 118 Me. 382, 108 A. 452. In these cases the court held that contracts between a water company and a municipality made prior to the 1913 Act must give way to rates established in the exercise of the usual principles of utility regulation by the Commission. In short, as the court said in *Guilford,* at page 374, ". . . the contract is subject to state restriction, and to regulation in the interest of the general public. . ."

In *Searsport* it was again held that contracts between utilities and towns did not preclude regulation by the Commission. The court said, on page 393: "All contracts relating to the public service are entered into in contemplation of the exercise of the right of the State's regulatory powers whenever the public interests may require." Further, the court said, speaking with particular reference to the contracts made prior to the establishment of the Public Utilities Commission, at page 394:

> "The main purpose of such legislation, viz: to secure adequate service to the public at just and reasonable rates, might, in a large measure, be defeated by the exemption from the operation of such laws of all rates fixed by contract entered into prior to their taking effect. No rates, however fixed, should, we think, be regarded as exempted from such general regulatory powers as are contained in Chapter 55 (now R. S. c. 44), *unless excepted in express terms or by necessary implication.*"

The court clearly recognized in the words we have underscored that the Legislature had the power to exempt from the general regulatory power.

The Auburn Water District charter was enacted in 1923, ten years after the establishment of the Public Utilities Commission, and four years after the *Guilford* and *Searsport* decisions. We may properly assume that the Legislature had in mind not only the 1913 Public Utilities Act, but also the decisions construing the Act, in fixing a water rate for Auburn and a limitation upon the life of bond issues.

The argument of the Commission is that the regulation of water districts was placed in its hands by the 1913 Act, now R. S., c. 44. Without question, this is in general terms a fair statement. The Commission, however, fails to take into consideration that the Legislature may limit the power of its agent, the Commission, if it so pleases. In what plainer words could the Legislature have established the amount required to be paid annually for water services by the city? The amount is fixed at $3,000. (§ 3.) Under Section 16 the trustees establish the rates except for the city and such rates (i.e. the rates so established) are subject to approval of the Commission.

The usual principles governing the regulation of rates of privately owned utilities do not operate in the instant case. We have here no problem involving a proper rate of return on the property of the utility. See for example *New England Tel. & Tel. Co.* v. *Public Utilities Commission,* 148 Me. 374, 94 A. (2nd) 801; *CMPCo.* v. *Public Utilities Commission,* 150 Me. 257, 109 A. (2nd) 512; *CMPCo. Re Contract Rate,* 152 Me. 32, 122 A. (2nd) 541.

The Auburn Water District, like other districts, is not entitled to and it does not seek any given rate of return on its property. In general, what it requires is sufficient in-

come to meet current expenses of operation and maintenance with provision for necessary extensions and renewals, and payment of interest and indebtedness. The Auburn Water District charter unlike many such charters does not state the specific purposes including bond retirement for which rates may be charged. Such charters usually require that the rates provide each year a sum equal to a stated percentage of the bonded indebtedness. A typical example is South Berwick Water District, P. & S. L., 1959, c. 61, § 13, **"Water rates; application of revenue; sinking fund. III** . . . not less than 1% nor more than 5% of the entire indebtedness" for a sinking fund, or retirement of not less than 1% of the bonds each year. For the history of provisions relating to income of water districts see *Waterville* v. *Kennebec Water District, et al.,* 138 Me. 307, 316, 318, 25 A. (2nd) 475.

It is plain therefore that the rates of the Auburn Water District will be sufficient for the purposes of the district if they provide for the items indicated including the retirement of the bonds within the authorized life.

Let us assume the city under its fixed rate is not paying its fair share of the expenses of the district and that the burden is thus shifted to the other rate payer. What authority, we may ask, has the Commission to correct the imbalance?

The Commission must act in accordance with the authority given by the Legislature. It must accept the city water rate fixed by the Legislature, and must direct its attention to the approval or disapproval of the rates established by the trustees in light of the needs of the District.

The Commission in our view falls into a like error in refusing to approve rates designed to pay bonds within their limited life. The Legislature in its judgment has said "every issue of bonds shall be payable within a term of 30

years" with certain provisions for serial payments or sinking fund. The Commission takes the position that it is unfair to the present users to require them to pay within 30 years indebtedness incurred to pay for extensions or other property with a much longer useful life. Here again the Commission fails to note the difference between the publicly owned water district and the privately owned utility. It might be an intolerable burden upon the customer of a private utility to force, for example, too rapid retirement of debt from income. The yardstick of rate regulation designed for the private utility is not a suitable measure for use with the quasi municipal water district.

There is a further and compelling reason why the Commission cannot be said to control this issue. It is well understood that the property of the inhabitants of a water district is liable for its debts. The Legislature very properly may have considered it was wise to require that the load of debt weighing against the inhabitants should be lifted within a period of 30 years.

Restrictions upon the issuance of bonds by water districts are repeatedly found in our legislative history. The acceptance of such regulation by the Legislature for nearly half a century since the adoption of the Public Utilities Act in 1913 is shown in charter after charter. Without question, the Legislature could have placed the regulation of bonds including their life and income to meet their payment in the hands of the Commission. In this instance the Legislature plainly did not do so.

We express no view upon what action the Legislature may or may not take to alter or change the provisions relating to the city water rates, or the issuance of bonds. It will be time enough to consider these matters when and if the Legislature acts. Our inquiry has been directed to ascertain the intention of the Legislature and then to determine whether the intention can be carried out by the Commission.

We conclude that it is the duty of the Commission in passing upon the rate structure of the Auburn Water District to take into account: first, that the city water rate is fixed by charter at $3,000, and second, that bonds must be extinguished within 30 years.

The petition in equity must be sustained. The order of the Commission is hereby annulled to the extent of the unlawfulness thereof as set forth in this opinion. The cause is remanded to the Public Utilities Commission (1) for the consideration of the rates of the Auburn Water District under the principles herein set forth upon the present record or such further evidence as the Commission may receive in its discretion, and (2) for entry of an order of which a copy shall be filed by the Public Utilities Commission with the Clerk of the Law Court in the County of Kennebec within 10 days after the date of said order. The petition in equity is retained on this docket until final disposition thereof.

*So ordered.*