MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions

Decision:     2020 ME 109
Docket:       Cum-20-181
Argued:       August 5, 2020
Decided:      August 13, 2020
Revised:      December 31, 2020

Panel:        GORMAN, JABAR, HUMPHREY, and HORTON, JJ., and HJELM, A.R.J.


AVANGRID NETWORKS, INC., et al.

v.

SECRETARY OF STATE et al.


PER CURIAM

[¶1]  Avangrid Networks, Inc., the company that owns Central Maine Power Company (CMP) as a subsidiary, and intervenors Maine State Chamber of Commerce and Industrial Energy Consumer Group (IECG) appeal from a judgment of the Superior Court (Cumberland County, *Warren, J.*) dismissing their complaints for a declaratory judgment and to enjoin the Secretary of State from placing a citizen initiative on the November 2020 ballot.  The initiative proposes a "resolve" that would reverse a Maine Public Utilities Commission order granting CMP's request for a certificate of public convenience and necessity for the New England Clean Energy Connect Transmission Project (the Project)—"a 145.3-mile transmission line, proposed to run from the Maine-Québec border in Beattie Township to Lewiston, that will deliver 1,200

2

megawatts of electricity from Québec to the New England Control Area." *NextEra Energy Res., LLC v. Me. Pub. Utils. Comm'n*, 2020 ME 34, ¶ 1, 227 A.3d 1117. The Secretary of State and intervenors Mainers for Local Power and nine Maine voters cross-appeal.[1]

[¶2] We conclude that the Superior Court erred by dismissing the declaratory judgment count of the complaint, and we therefore vacate that portion of the judgment and remand the matter for the Superior Court to enter a declaratory judgment that the initiative fails to meet the constitutional requirements for inclusion on the ballot because it exceeds the scope of the people's legislative powers conferred by article IV, part 3, section 18 of the Maine Constitution. Because the Secretary of State has expressed his willingness to heed a clearly stated declaration from us, we see no necessity for injunctive relief.

## I. BACKGROUND

[¶3] The citizens' initiative at issue here is responsive to a decision issued by the Public Utilities Commission in 2019. *Id.* ¶ 10. We begin by

---

[1] We have received amici curiae briefs from former Maine legislators Mark N. Dion and Kenneth C. Fletcher; former Commissioners of the Public Utilities Commission Thomas L. Welch, William M. Nugent, and Mark A. Vannoy; Dmitry Bam, professor of law; and Orlando E. Delogu, emeritus professor of law.

summarizing the proceedings before the Commission and our review of the Commission's decision on appeal, after which we focus on the citizens' initiative and the litigation before us today.

A.  Proceedings Before the Public Utilities Commission and Appeal to the Law Court

[¶4]  This matter has its origins in a petition that CMP filed with the Commission in 2017 seeking a certificate of public convenience and necessity for the Project.  *Id.* ¶ 3; *see* 35-A M.R.S. § 3132 (2018).[2]  After holding an extensive public hearing and considering a voluminous amount of evidence, the Commission's hearing examiners issued a report in March 2019 containing their recommendations.  *NextEra Energy Res., LLC*, 2020 ME 34, ¶¶ 6-9, 227 A.3d 1117.  In a lengthy written order issued in May 2019, the Commission adopted the examiners' recommendations and findings.  *Id.* ¶ 10.  The Commission concluded that the Project meets the statutory public need standard and is in the public interest, and it issued the certificate.  *Id.*  We affirmed the Commission's decision in March 2020.  *Id.* ¶¶ 1, 43.

---

[2] Section 3132 has since been amended.  *See* P.L. 2019, ch. 298, §§ 7-11 (effective Sept. 19, 2019) (codified at 35-A M.R.S. § 3132(2-D), (3), (3-A), (5), (6) (2020)); P.L. 2019, ch. 205, § 4 (effective Sept. 19, 2019) (codified at 35-A M.R.S. § 3132(1-B) (2020)).

4

B.    Citizens' Initiative

[¶5]  After the Commission issued its decision, opponents of the Project gathered signatures for a citizens' initiative proposing the adoption of a resolve directing the Commission to amend its order and issue the opposite determinations—that the Project is not in the public interest and that there is no public need for the project—and to deny the request for a certificate of public convenience and necessity.  The initiative reads,

> **Sec. 1.  Amend order.  Resolved:** That within 30 days of the effective date of this resolve and pursuant to its authority under the Maine Revised Statutes, Title 35-A, section 1321, the Public Utilities Commission shall amend "Order Granting Certificate of Public Convenience and Necessity and Approving Stipulation," entered by the Public Utilities Commission on May 3, 2019 in Docket No. 2017-00232 for the New England Clean Energy Connect transmission project, referred to in this resolve as "the NECEC transmission project."  *The amended order must find that the construction and operation of the NECEC transmission project are not in the public interest and that there is not a public need for the NECEC transmission project.  There not being a public need, the amended order must deny the request for a certificate of public convenience and necessity for the NECEC transmission project.*

Resolve, To Reject the New England Clean Energy Connect Transmission Project (emphasis added) (available at the Secretary of State's website: https://www.maine.gov/sos/cec/elec/citizens/index.html).[3]   The initiative's

---

3  The summary to the initiative provides as follows:

proponents submitted petitions bearing more than the required number of signatures verified by the Secretary of State. *See* Me. Const. art. IV, pt. 3, ¶ 18, cl. 2*; Reed v. Sec'y of State*, 2020 ME 57, ¶ 10, --- A.3d ---. In an action challenging that verification, the court (*Murphy, J.*) entered a judgment in the Business and Consumer Docket affirming the Secretary's determination in April 2020. *Id.* ¶¶ 1, 11. We affirmed that judgment on appeal on May 7, 2020. *Id.* ¶¶ 12-24.

[¶6] In the meantime, the Secretary presented the proposed initiative to the Legislature in a communication dated March 16, 2020. *See* Me. Const. art. IV, pt. 3, § 18, cl. 2; Sen. Jour. (129th Legis. Mar. 17, 2020) (reporting S.C. 1058); House Jour. Supp. No. 10 (129th Legis. Mar. 17, 2020) (reporting H.P. 1548). The Legislature, however, adjourned *sine die* the next day as a result of the COVID-19 pandemic and did not enact the proposal. *See* Sen. Jour. (129th Legis. Mar. 17, 2020) (reporting S.C. 1059, 1060); House Jour. Supp. No. 4 (129th Legis. Mar. 17, 2020) (reporting H.C. 384, 385).

---

This initiated bill directs the Public Utilities Commission to amend "Order Granting Certificate of Public Convenience and Necessity and Approving Stipulation," entered by the Public Utilities Commission on May 3, 2019 for the New England Clean Energy Connect transmission project. The amended order must find that the construction and operation of the NECEC transmission project are not in the public interest and that there is not a public need for the NECEC transmission project. There not being a public need, the amended order must deny the request for a certificate of public convenience and necessity for the NECEC transmission project.

6

C.    The Present Litigation

[¶7]  On May 12, 2020, days after we affirmed the Secretary's verification of the petition signatures, Avangrid filed the verified complaint that initiated the present litigation.  The complaint, naming the Secretary of State as the defendant, sought

- A declaratory judgment that the initiative

  o  Exceeds the scope of legislative powers reserved to the people, *see* Me. Const. art. IV, pt. 3, § 18;

  o  Usurps the power of the executive and judicial branches, *see* Me. Const. art. III, § 2; and

  o  Is illegal as a special law that singles out one corporation to exempt from the generally applicable law; and

- Injunctive relief preventing the Secretary from including the initiative on the November 3, 2020, ballot.

Avangrid simultaneously moved for a preliminary injunction to prevent the initiative from appearing on the ballot.  The court granted motions filed by Maine State Chamber of Commerce and IECG to intervene, and each entity filed a complaint joining in Avangrid's requests for declaratory and injunctive relief. The court also granted motions to intervene filed by NextEra Energy Resources, LLC; Mainers for Local Power; and nine Maine voters.

[¶8]   Mainers for Local Power and the nine Maine voters moved to dismiss the complaint on several grounds, including that (1) the requested

relief is barred because the Maine Constitution requires the Secretary to include the initiative on the ballot, *see* Me. Const. art. IV, pt. 3, § 18; (2) the claims were not ripe before the election; and (3) the initiative is constitutional because utilities regulation is a legislative function.

[¶9]  After conducting commendably expedited proceedings, including a hearing, the Superior Court issued a judgment on June 29, 2020, concluding that the initiative's constitutionality was not subject to judicial review before the election and dismissing Avangrid's complaint in which the Chamber of Commerce and IECG had joined.  Avangrid, the Chamber of Commerce, and IECG appealed from the judgment, and the Secretary of State, Mainers for Local Power, and the nine Maine voters filed cross-appeals, all of which are now before us.

## II.  DISCUSSION

### A.    Positions of the Parties

[¶10]  The issue before us is narrow—whether the proposed citizens' initiative falls within the scope of the citizens' constitutional power to legislate, created in section 18 of article IV, part 3 of the Maine Constitution.  This case cannot—and therefore does not—prospectively address the constitutionality or legality of the initiative itself as an independent issue.   Any such

8

determination necessarily could be made only if the issue became ripe, which would be after an initiative is enacted. *See Wagner v. Sec'y of State*, 663 A.2d 564, 567 (Me. 1995). Further but importantly, it goes without saying that our analysis and conclusions are entirely divorced from the merits of the initiative because the merits of the initiative have nothing to do with whether it should appear on the ballot.

[¶11] Avangrid, the Chamber of Commerce, and IECG argue that we should review the constitutional propriety of submitting the measure to the electors at all. They argue that the initiative falls outside the scope of legislative power conferred on the people of Maine through the direct initiative provisions of the Maine Constitution because the initiative usurps executive and judicial functions.

[¶12] The Secretary of State agrees with Avangrid that the initiative exceeds the citizens' legislative power but argues, as it did in the trial court, that Avangrid has not satisfied every element necessary to obtain injunctive relief. Mainers for Local Power, the nine Maine voters, and NextEra contend that the dismissal of the complaint was proper. Mainers for Local Power and the nine Maine voters additionally argue that the substance of the proposed resolve comports with Maine's Constitution because the Legislature merely delegated

legislative power to the Commission, and the Legislature remains free to interpose itself in proceedings where the Commission has acted.[4]

---

[4] Mainers for Local Power and the nine Maine voters also argue that Avangrid's complaint was untimely because it was not filed in time to satisfy the 100-day limit prescribed in the following constitutional provision:

> The Legislature may enact laws not inconsistent with the Constitution to establish procedures for determination of the validity of written petitions. Such laws shall include provision for judicial review of any determination, to be completed within 100 days from the date of filing of a written petition in the office of the Secretary of State.

Me. Const. art. IV, pt. 3, § 22; *see* 21-A M.R.S. §§ 901(7), 905 (2020). We are unpersuaded by this temporal argument because it is not the Secretary's determination of "the validity of written petitions" that is at issue here, and therefore the 100-day limit on the completion of judicial review of that decision does not apply. Neither the Maine Constitution nor the adopted statutes governing initiatives suggest that the Secretary of State would have the power, when determining the "validity of written petitions" pursuant to article IV, part 3, section 22 and 21-A M.R.S. § 905, to decide whether the subject matter of a petition exceeds the legislative power conferred on Maine citizens. Rather, the statutes focus the Secretary's attention on the petitioner's compliance with the requirements of a "written petition" as set forth in the Maine Constitution and the statutes. *See* Me. Const. art. IV, pt. 3, §§ 18, 20, 22; 21-A M.R.S. §§ 901-905 (2020). A "written petition" is specifically defined in Me. Const. art. IV, pt. 3, § 20:

> "[W]ritten petition" means one or more petitions written or printed, or partly written and partly printed, with the original signatures of the petitioners, or, as authorized by law, the alternative signatures of persons with physical disabilities that prevent them from signing their own names, attached, verified as to the authenticity of the signatures by the oath of the circulator that all of the signatures to the petition were made in the presence of the circulator and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be, and accompanied by the certificate of the official authorized by law to maintain the voting list or to certify signatures on petitions for voters on the voting list of the city, town or plantation in which the petitioners reside that their names appear on the voting list of the city, town or plantation of the official as qualified to vote for Governor. . . .

The election statutes confer a limited gatekeeper function upon the Secretary of State to review the form of an application for direct initiative petitions and to reject an application that does not meet the formal requirements for proposed legislation. *See* 21-A M.R.S. § 901 (requiring those pursuing a direct initiative to "submit a written application to the Department of the Secretary of State on a form designed by the Secretary of State" to present the "proposed law" to the Secretary). The statute limits the Secretary's review of an application to matters of form. *See id.* §§ 901(3-A), 905(1); *see also Wyman v. Sec'y of State*, 625 A.2d 307, 311 (Me. 1993) (stating that the Secretary of State's "refusal to furnish the petition form based on the *content* of the proposed legislation impermissibly violated

B.     Standard of Review and Rules of Construction for Interpreting the Maine Constitution's Direct Initiative Provisions

[¶13]   This appeal requires us to construe the Maine Constitution to determine whether the initiative should be declared invalid and the Secretary of State should be enjoined from submitting the initiative to Maine voters.  We review the legal issues presented on appeal de novo.  *See McGee v. Sec'y of State*, 2006 ME 50, ¶ 5, 896 A.2d 933 (constitutional interpretation); *Johnson v. Crane*, 2017 ME 113, ¶ 9, 163 A.3d 832 (ripeness).

[¶14]   To interpret the Maine Constitution, we "look primarily to the language used."  *Voorhees v. Sagadahoc County*, 2006 ME 79, ¶ 6, 900 A.2d 733 (quotation marks omitted).  We construe constitutional provisions by using the same principles of construction that we apply in cases of statutory interpretation.  *Id.*  Thus, we will "apply the plain language of the constitutional provision if the language is unambiguous," and "[i]f the provision is ambiguous, we [will] determine the meaning by examining the purpose and history surrounding the provision."  *Id.*

---

Wyman's rights protected by the first amendment" (emphasis added)).  By the terms of the Maine Constitution, the 100-day limit on judicial review pertains to this determination only.  *See* Me. Const. art. IV, pt. 3, § 22.  The courts, however, have the authority "to declare rights, status and other legal relations whether or not further relief is or could be claimed," and there is no constitutional or statutory limitation on that authority that constrains our action in this matter.  14 M.R.S. § 5953 (2020).

[¶15] In pertinent part, the constitutional provision regarding "[d]irect initiative of legislation" provides that "electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition addressed to the Legislature or to either branch thereof." Me. Const. art. IV, pt. 3, § 18, cl. 1. We have held, "The broad purpose of the direct initiative is the encouragement of participatory democracy. By section 18 the people, as sovereign, have retaken unto themselves legislative power, and that constitutional provision must be liberally construed to facilitate, rather than to handicap, the people's exercise of their sovereign power to legislate. . . . [S]ection 18 cannot be said merely to *permit* the direct initiative of legislation upon certain conditions. Rather, it reserves to the people the *right* to legislate by direct initiative if the constitutional conditions are satisfied." *McGee*, 2006 ME 50, ¶ 25, 896 A.2d 933 (quotation marks omitted). With these standards in mind, we now consider whether pre-election judicial review is proper in this case.

C.     Ripeness and Pre-Election Judicial Review

[¶16] A challenge to the constitutionality of the substance of a proposed citizen initiative is ordinarily not ripe for judicial consideration before an

election because "[j]usticiability requires that there be a real and substantial controversy based upon an existing set of facts, not upon a state of facts that may or may not arise in the future." *Lockman v. Sec'y of State*, 684 A.2d 415, 420 (Me. 1996) (quotation marks omitted). We will not opine on "the future effect, enforceability, and constitutionality of [an] initiative if enacted" because "the initiative may never become effective." *Wagner*, 663 A.2d at 567. There is no "concrete, certain, or immediate legal problem" in such circumstances. *Id.* "[T]o express a view as to the future effect and application of proposed legislation would involve [us] at least indirectly in the legislative process, in violation of the separation of powers mandated by Article III, Section 2, of the Maine Constitution." *Id.* (quotation marks omitted).

[¶17] Similarly, Justices of the Supreme Judicial Court have opined that an initiative proposing a bill that is *substantively* unconstitutional is not subject to pre-election challenge and must be submitted to the electors because of the constitutional directive that an initiative "shall be submitted to the electors." Me. Const. art. IV, pt. 3, § 18, cl. 2; *see Opinion of the Justices*, 673 A.2d 693, 697, 698 (Me. 1996); *Opinion of the Justices*, 623 A.2d 1258, 1264 (Me. 1993) (answer of Glassman and Clifford, JJ.); *but see Opinion of the Justices*, 623 A.2d at 1261-63 (answer of Wathen, C.J., and Roberts, Collins, Rudman, and Dana, JJ.)

(reaching the question before the Legislature decided whether to enact the proposal or send it to the voters and opining that an initiative fell within the citizens' legislative power); *see also Wagner*, 663 A.2d at 566 n.3 ("Since the Legislature has not enacted the initiative without change, it must be referred to the electors."); *Wyman v. Sec'y of State*, 625 A.2d 307, 310 (Me. 1993) (same).

[¶18]  In contrast, courts *are* authorized by the Maine Constitution and state statutes to determine whether the proposed initiative satisfies the procedural prerequisites for a direct initiative.  For example, we have reviewed whether the Secretary of State erred in failing to invalidate certain petition signatures for the initiative now before us, *Reed*, 2020 ME 57, ¶ 1, --- A.3d ---, and whether the Secretary of State was required to receive petitions invoking a people's veto referendum on a bill enacted as an emergency measure in 1951, *Morris v. Goss*, 147 Me. 89, 90, 83 A.2d 556 (1951) (construing Me. Const. art. IV, pt. 3, § 16).[5]

---

[5]  Notably, in both *Morris v. Goss*, 147 Me. 89, 90, 83 A.2d 556 (1951), and the more recent case of *Friends of Congress Square Park v. City of Portland*, 2014 ME 63, ¶¶ 1, 91 A.3d 601, we were considering whether government actors improperly *denied* ballot access for a citizens' initiative—decisions that were ripe for review because of a live controversy calling for a decision with real consequences.  In *Friends of Congress Square Park*, we affirmed the Superior Court's judgment ordering the City of Portland to place a citizens' initiative on the ballot because it was within the scope of the initiative power set forth in the City Code.  *Id.* ¶¶ 1, 19.

[¶19] At issue here is whether, as with issues regarding the adequacy of compliance with the petition process, courts may properly decide, pre-election, whether a proposed initiative must be excluded from the ballot because it exceeds the scope of the citizens' legislative power. Although we have never expressly decided the issue, many other state courts have reached questions pre-election about whether an initiative exceeds the people's legislative authority. *See, e.g., AFL v. Eu*, 686 P.2d 609, 614-15 (Cal. 1984); *City of Idaho Springs v. Blackwell*, 731 P.2d 1250, 1253 (Colo. 1987); *Garvin v. Ninth Jud. Dist. Ct.*, 59 P.3d 1180, 1190-91 (Nev. 2002); *Town of Hilton Head Island v. Coal. of Expressway Opponents*, 415 S.E.2d 801, 805 (S.C. 1992); *Philadelphia II v. Gregoire*, 911 P.2d 389, 394 (Wash. 1996). Such pre-election review is authorized because a court is not called upon to review the substantive constitutionality of proposed legislation but rather is called upon to determine whether *legislation* has been proposed at all. *See* James D. Gordon III & David B. Magleby, *Pre-Election Judicial Review of Initiatives and Referendums*, 64 Notre Dame L. Rev. 298, 302-03 (1989) (distinguishing among pre-election arguments that "the measure, if passed, would be substantively invalid"; that the proponents failed "to meet the procedural requirements to qualify the

measure for an election"; and that "the ballot measure does not fall within a proper subject matter for direct legislation").[6]

[¶20]  Unlike the cases in which Maine Justices have declined to conduct pre-election review of direct initiatives on the ground that the substantive constitutionality of proposed legislation was not ripe for review, *see Opinion of the Justices*, 673 A.2d at 697, 698; *Opinion of the Justices*, 623 A.2d at 1264 (answer of Glassman and Clifford, JJ.), this case presents the question whether the subject matter of the initiative is even eligible to proceed as a direct initiative.

[¶21]  In *Wagner v. Secretary of State*, we reviewed the subject matter of a direct initiative to determine whether it was within the scope of the people's right to initiate legislation and, after confirming that it was, we declined to review the substantive constitutionality of the proposed law.  663 A.2d at 567. In *Wagner*, opponents of an initiative proposing the enactment of a statute asserted that the initiative was outside the scope of article IV, part 3, section 18 because it proposed a constitutional amendment rather than legislation, and

---

[6] The states that have declined to reach constitutional issues pre-election have, in general, done so either because additional facts may become relevant or because the issues pertained to the substantive constitutionality of the proposed legislation, as opposed to the constitutional prerequisites for a citizens' initiative to be submitted to the voters in the first place. *See, e.g.*, *Stewart v. Advanced Gaming Techs., Inc.*, 723 N.W.2d 65, 77 (Neb. 2006); *Carter v. Lehi City*, 269 P.3d 141, 164 (Utah 2012).

also because the proposed statute would be substantively unconstitutional if enacted. *Id.* at 566-67. We addressed, on its merits, the question of whether the initiative proposed a constitutional amendment, holding that "[t]he Superior Court specifically addressed, and correctly rejected, the argument that the initiative was a disguised constitutional amendment." *Id.* at 567. Based on that conclusion, we said, "The proposed initiative legislation does not present us with a subject matter beyond the electorate's grant of authority." *Id.* Having decided that the subject matter of the initiative was within the scope of the people's right of initiative, we declined, on ripeness grounds, to address the substantive constitutionality of the proposed statute. *Id.* at 567-68.

[¶22] *Wagner* illustrates that the courts' limited involvement in the direct initiative process can, in addition to procedural matters, extend to the question of whether a direct initiative is within the people's constitutional right to initiate legislation. Plainly, a proposal that is outside the scope of the people's right to initiate legislation cannot, as a constitutional matter, proceed to the electorate as a direct initiative. *See id.* at 567. We therefore conclude that the question of whether the subject matter of this direct initiative is within the scope of the people's right to initiate legislation is ripe for judicial review. *See* Gordon & Magleby at 314 ("Procedural and subject matter requirements could

be viewed as jurisdictional limitations; government officials do not have jurisdiction to conduct an election on a measure if these requirements have not been met, and this issue is immediately justiciable."). We now turn to that constitutional issue.

D.   Constitutionality of Submitting the Subject Matter of the Proposed Initiative to the Voters

[¶23]   We begin by outlining the separation of powers in the Maine Constitution and then turn our focus to the constitutional provisions authorizing a direct initiative of legislation to determine whether an initiative requiring the Public Utilities Commission to alter a decision on a certificate of public convenience and necessity is within the scope of the citizens' initiative power.

1.   Constitutional Separation of Powers

[¶24]   The Maine Constitution establishes three separate branches of government:

> **Section 1. Powers distributed.**   The powers of this government shall be divided into 3 distinct departments, the legislative, executive and judicial.

> **Section 2. To be kept separate.**   No person or persons, belonging to one of these departments, shall exercise any of the powers properly belonging to either of the others, except in the cases herein expressly directed or permitted.

Me. Const. art. III. As we stated not long after Maine had become a state, the more that the "independence of each department, within its constitutional limits, can be preserved, the nearer the system will approach the perfection of civil government, and the security of civil liberty." *Lewis v. Webb*, 3 Me. 326, 329 (1825). The question at issue here is whether the initiative proposes an act that is not legislative and is therefore not within the people's right to initiate legislation. We thus turn to the scope of that right as defined in the constitutional provisions authorizing the direct initiative of legislation.

2.    Legislative Nature of a Direct Initiative Proposing a Resolve

[¶25]  As we note above, the constitutional provision regarding "[d]irect initiative of legislation" states that "electors may propose to the Legislature for its consideration *any bill, resolve or resolution*, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition addressed to the Legislature or to either branch thereof." Me. Const. art. IV, pt. 3, § 18, cl. 1 (emphasis added). The terms "bill," "resolve," and "resolution" are not defined in the Maine Constitution. *But cf.* Me. Const. art. IV, pt. 3, § 20 (defining other terms such as "electors," "people," and "written petition").

[¶26]   Our previous cases indicate that a "resolve," like a "bill" or "resolution," is a legislative act.  We have explicitly and repeatedly described a resolve as "having the force of law."  *Moulton v. Scully*, 111 Me. 428, 448, 89 A. 944 (1914); *see also Lockman*, 684 A.2d at 419 (construing Me. Const. art. IV, pt. 3, § 16); *Day v. Bishop*, 71 Me. 132, 133 (1880).  We have also interpreted the language, "every bill or resolution having the force of law," to refer to "what is commonly known as *legislative acts and resolves*, which are passed by both branches, are usually signed by the governor and are embodied in the Legislative Acts and Resolves, as printed and published."  111 Me. at 448, 89 A. 944 (emphasis added) (quotation marks omitted).  In stating that it is within the power of the Legislature to adopt a resolve "without any purpose or intention to abrogate, annul or repeal any existing general law," we acknowledged that a resolve is nonetheless legislative action.  *City of Bangor v. Inhabitants of Etna*, 140 Me. 85, 89-91, 34 A.2d 205 (1943).  Thus, section 18, although not explicitly using the term "legislation," requires that a citizens' initiative constitute legislative action.  *See also League of Women Voters v. Sec'y of State*, 683 A.2d 769, 771 (Me. 1996) (stating that "[w]hen the people enact legislation by popular vote," they engage in the "exercise of their sovereign power to legislate").

[¶27]  This construction of section 18 is consistent with a reading of the provision in the context of part 3 of article IV of the Maine Constitution, entitled "Legislative Power," and, importantly, the title of section 18 itself, "Direct initiative of *legislation*," Me. Const. art. IV, pt. 3, § 18 (emphasis added). Legislative power is, at its core, the "full power to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State, not repugnant to this Constitution, nor to that of the United States." Me. Const. art. IV, pt. 3, § 1; *see League of Women Voters*, 683 A.2d at 771 ("The exercise of initiative power by the people is simply a popular means of exercising the plenary *legislative* power 'to make and establish all reasonable laws and regulations for the defense and benefit of the people of this State . . . .' Me. Const. art. IV, pt. 3, § 1." (emphasis added)).[7]  Thus, the citizens' power of direct initiative "applies only to legislation, to the making of laws, whether it be a public act, a private act or a resolve having the force of law." *Moulton*, 111 Me. at 448, 89 A. 944.

---

[7]  As with legislation proposed by the Legislature, courts will not ordinarily determine whether the *substance* of the legislation is "repugnant to [the Maine] Constitution" before the legislation has been enacted.  Me. Const. art. IV, pt. 3, § 1; *see Guardianship of Chamberlain*, 2015 ME 76, ¶ 35, 118 A.3d 229 (holding that the standard of proof in a statute passed by the Legislature was unconstitutional); *cf. Opinion of the Justices*, 2017 ME 100, ¶¶ 55, 60-68, 162 A.3d 188 (opining, on a solemn occasion, that citizen-initiated legislation that had been approved by voters violated the constitution).  This determination is distinct from the question of whether an initiative proposes actual *legislation*.

[¶28]  Justices of the Supreme Judicial Court have opined, in response to questions propounded by legislative bodies, that it is *not* within the power of the electors to initiate

- A bond issue, *see Opinion of the Justices*, 159 Me. 209, 214-15, 191 A.2d 357 (1963) (citing Me. Const. art. IX, § 14); or

- A de facto amendment to the United States Constitution by petitioning to initiate legislation directing members of the State's congressional delegation, the governor, and state legislators to apply to the United States Congress for a constitutional convention, *see Opinion of the Justices*, 673 A.2d 693, 697 (Me. 1996) (citing U.S. Const. art. V).

In each instance, the Justices concluded that these matters were within the exclusive province of the Legislature and therefore beyond the legislative power of the citizens.

[¶29]  Sitting as the Law Court, we have also addressed the extent of legislative power.  Five years after the constitutional amendment adopting the initiative process took effect in 1909, *see* Resolves 1907, ch. 121 (effective Jan. 6, 1909), we declined to delay the effect of the Legislature's resolve adopting an address to the Governor to remove the Sheriff of Cumberland County, holding that there was no need to afford the opportunity for a petition for a people's veto, *see* Me. Cont. Art. IV, pt. 3, §§ 16, 17, because the Legislature's resolve constituted an exercise of its power of *impeachment* pursuant to

article IX of the Maine Constitution and not its *lawmaking* power pursuant to article IV. *Moulton*, 111 Me. at 431, 447-51, 89 A. 944.

[¶30]  More recently, we listed characteristics of acts considered to be legislative in determining whether a municipal citizen initiative had to be presented to the voters pursuant to that municipality's charter:

> [C]ourts consider an act to be legislative if it: (1) makes new law, rather than executes existing law; (2) proposes a law of general applicability, rather than being based on individualized, case-specific considerations; (3) relates to subjects of a permanent or general character, as opposed to subjects that are temporary in operation and effect; (4) declares a public purpose and provides for the ways and means to accomplish that purpose, rather than implementing existing policy or dealing with a small segment of an overall policy question; (5) requires only general knowledge, rather than specialized training and experience or an intimate knowledge of the fiscal or other affairs of government; (6) does not involve a subject matter in which the legislative body has delegated decisionmaking power for local implementation; (7) establishes or amends zoning laws; (8) is informed by historical examples of legislative acts, such as longstanding parallels in statutes enacted by legislative bodies, rather than traditionally executive acts; or (9) is an amendment to a legislative act.

*Friends of Cong. Square Park v. City of Portland*, 2014 ME 63, ¶ 13 n.7, 91 A.3d 601 (citations omitted).

[¶31]  To decide whether the initiative at issue here is constitutionally permissible by proposing legislation within the meaning of article IV, part 3,

section 18 of the Maine Constitution, we next consider the nature of the powers held and exercised by the Public Utilities Commission.

3. Legislative and Quasi-Judicial Executive Powers of the Public Utilities Commission

[¶32] The Legislature created the Public Utilities Commission in 1913 so that the Commission—constituted of individuals who would have greater expertise in the field than legislators—would regulate and control public service corporations. *See* P.L. 1913, ch. 129 (approved Mar. 27, 1913; survived people's veto Sept. 14, 1914); Legis. Rec. 907 (1913); *In re Searsport Water Co.*, 118 Me. 382, 392, 108 A. 452 (1919); *see also Auburn Water Dist. v. Pub. Utils. Comm'n*, 156 Me. 222, 225, 163 A.2d 743 ("The regulation of public utilities lies with the Legislature and not with the Executive or Judiciary."). The Legislature "delegated its entire authority over the [regulation of public utilities] to the Commission." *New England Tel. & Tel. Co. v. Pub. Utils. Comm'n*, 470 A.2d 772, 778 (Me. 1984); *see* 35-A M.R.S. § 111 (2020) (granting the Commission rulemaking authority). "The power of the Legislature was not, however, surrendered, but delegated. The Commission has no life except as life is given by the Legislature." *Auburn Water Dist.*, 156 Me. at 226, 163 A.2d 743.

[¶33] Although legislative authority has been delegated to the Commission, the Commission also functions as an executive agency with its

members appointed by the Governor, "subject to review by the joint standing committee of the Legislature having jurisdiction over public utilities and to confirmation by the Legislature," to execute its statutory obligations. 35-A M.R.S. § 105(1) (2020). Also, the Governor—not the Legislature—designates one member as the chair. 35-A M.R.S. § 106(1) (2020). The Commission has an administrative adjudicatory role that is traditionally regarded as a quasi-judicial function of a State agency in *executing* the law. *See* 35-A M.R.S. §§ 104, 1301-1323 (2020); *see Forest Ecology Network v. Land Use Regul. Comm'n*, 2012 ME 36, ¶ 45 n.11, 39 A.3d 74 ("A basic tenet of administrative law is that rulemaking is a quasi-legislative act, and that adjudication is a quasi-judicial act."); Tinkle, *The Maine State Constitution* 70 (2d ed. 2013) ("In general, the first branch enacts laws, the second approves and executes them, and the third expounds and enforces them." (citing *Ex parte Davis*, 41 Me. 38, 53 (1856))); *see also Friends of Cong. Square Park*, 2014 ME 63, ¶ 13 n.7, 91 A.3d 601 (stating the following as indicia of *legislative* activity: that a proposal "requires only general knowledge, rather than specialized training and experience or an intimate knowledge of the fiscal or other affairs of government"; that it *does not* involve a matter as to which the legislative body

has delegated decision-making power; and that it *does not* involve acts that are traditionally executive acts).

[¶34]  Thus, separate from its role in legislating through rulemaking to regulate public utilities, the Commission functions in an executive capacity as an administrative agency, including by holding a public hearing—sometimes, as in the proceeding at issue here, a hearing substantial both in duration and in the volume of information submitted to and considered by the Commission— and rendering a decision in a particular case when a utility has applied for a certificate of public convenience and necessity.  *See* 35-A M.R.S. §§ 1304, 3132(2), (6) (2020);[8] *see also* 5 M.R.S. §§ 9051-9064 (2020) (Maine Administrative Procedure Act); *cf. Cent. Me. Power Co. v. Me. Pub. Utils. Comm'n*, 395 A.2d 414, 427 (Me. 1978) (distinguishing the Commission's "substantive power to regulate" from its "lawful authority to conduct [an] investigation").  By statute, the Commission's adjudicatory decisions may then be appealed directly to the Law Court "in the same manner as an appeal taken from a judgment of the Superior Court in a civil action."  35-A M.R.S. § 1320(1) (2020).  The Commission's adjudicatory decisions therefore are subject to judicial—not

---

[8]  Although 35-A M.R.S. § 3132(6) (2018) was amended after the proceedings at issue here, it was not changed in any way that affects our reasoning here, and we cite the current statute. *See* P.L. 2019, ch. 298, § 11 (effective Sept. 19, 2019) (codified at 35-A M.R.S. § 3132(6) (2020)).

legislative—review.[9] *See id.*; *NextEra Energy Res., LLC*, 2020 ME 34, 227 A.3d 1117.

[¶35] The initiative at issue here is not legislative in nature because its purpose and effect is to dictate the Commission's exercise of its quasi-judicial executive-agency function in a particular proceeding. The resolve would interfere with and vitiate the Commission's fact-finding and adjudicatory function—an executive power conferred on the Commission by the Legislature. *See* 35-A M.R.S. § 3132(6). Although the Legislature may properly constrain the Commission in its legislative functions and may alter the authority conferred on the Commission, the Legislature would exceed its legislative powers if it were to require the Commission to vacate and reverse a particular administrative decision the Commission had made. *See* 35-A M.R.S. § 1323; *Grubb v. S.D. Warren Co.*, 2003 ME 139, ¶ 11, 837 A.2d 117 ("The Legislature may not disturb a decision rendered in a previous action, as to the parties to that action; to do so would violate the doctrine of separation of powers."). Thus,

---

[9] The Legislature has enacted a narrow exception to the exclusive grant of review to the courts, by means of a statute allowing a utility to apply to the Legislature "to grant a right, privilege or immunity which the commission has power to grant" after the utility has exhausted its rights with the Commission. 35-A M.R.S. § 1323 (2020). Here, CMP, the utility, is not applying to the Legislature or to the voters through this initiative. Because the issue is not before us, we do not address whether the Legislature's review of an adjudicatory decision of the Commission pursuant to section 1323 would be a constitutional exercise of legislative power.

the action that would be mandated by the direct initiative would be executive in nature, not legislative.

4.    Conclusion

[¶36]  Although we must "liberally construe[]" section 18 "to facilitate, rather than to handicap, the people's exercise of their sovereign power to *legislate*," *McGee*, 2006 ME 50, ¶ 25, 896 A.2d 933 (emphasis added) (quotation marks omitted), what is proposed here is not legislation.  The citizens' initiative, although labeled a "resolve," directs the Commission, in exercising its executive adjudicatory powers, to reverse its findings and reach a different outcome in an already-adjudicated matter in violation of the constraints of article IV, part 3, section 18 of the Maine Constitution.  *See Grubb*, 2003 ME 139, ¶ 11, 837 A.2d 117; *Friends of Cong. Square Park*, 2014 ME 63, ¶ 13 n.7, 91 A.3d 601.  Directing an agency to reach findings diametrically opposite to those it reached based on extensive adjudicatory hearings and a voluminous evidentiary record, affirmed on appeal, is not "mak[ing] and establish[ing]" a law.  Me. Const. art. IV, pt. 3, § 1.[10]

---

[10] Even with respect to special legislation, the Legislature may not enact "a private resolve singling out an individual for unique treatment."  *MacImage of Me., LLC v. Androscoggin County*, 2012 ME 44, ¶ 37, 40 A.3d 975; *see also Brann v. State*, 424 A.2d 699, 704 (Me. 1981) (holding that the special legislation clause is "violated by special legislation attempting to exempt one individual from generally applicable requirements of the law").  The case of *Auburn Water District v. Public Utilities Commission*, 156 Me. 222, 163 A.2d 743 (1960), does not undermine our reasoning because there, the Legislature's exemption of a water district from the general regulatory power was through a

[¶37]  Although an initiative "shall be submitted to the electors" if legislation is proposed in accordance with the process set forth in the Maine Constitution, Me. Const. art. IV, pt. 3, § 18, cl. 2; *see Wagner*, 663 A.2d at 566 n.3; *Wyman*, 625 A.2d at 310, here, no *legislation* is proposed.  Consequently, a constitutional prerequisite to a citizens' initiative is not satisfied—a determination that is proper for us to make because it is limited to the narrow question of whether the initiative is within the citizens' constitutional power to enact legislation.  *See Wagner*, 663 A.2d at 567.  Accordingly, we reach the issue pre-election and conclude that the constitutional prerequisite that an initiative proposing a "bill, resolve or resolution"—meaning legislative action—has not been met.  Me. Const. art. IV, pt. 3, § 18, cl. 1.[11]

---

special law establishing a charter for the water district—a function that is distinctly legislative in nature. *See also Taylor v. Pub. Utils. Comm'n*, 2016 ME 71, ¶ 8, 138 A.3d 1214 ("*As a legislative enactment*, we first examine the plain language of the charter as we would any other statute."). We held that the Commission was bound by the charter because the Legislature retains the right to legislate to regulate public utilities. *Auburn Water Dist.*, 156 Me. at 228-29, 163 A.2d 743. Here, in contrast, the initiative targets *nonlegislative* activities of the Commission, as we have explained above.

[11] Although the tight timeline for the current litigation is not ideal, we acknowledge that it is unclear whether the question we have decided today would have been ripe for adjudication before the Secretary acted and his decision was affirmed after judicial review. *See Lockman v. Sec'y of State*, 684 A.2d 415, 420 (Me. 1996) (requiring, for a matter to be ripe, "that there be a real and substantial controversy based upon an existing set of facts, not upon a state of facts that may or may not arise in the future" (quotation marks omitted)); *Wagner v. Sec'y of State*, 663 A.2d 564, 567 (Me. 1995) ("Ripeness concerns the fitness of the issue for judicial decision and the hardship to the parties of withholding court consideration."). As we have observed in footnote 4 above, the Secretary's power to review a written petition is limited to formal review. Before that review had been pursued to its conclusion, however, it was not clear that the measure would be presented to the voters unless a court entered a declaratory judgment on the issue we address today.

[¶38]  We therefore remand for the Superior Court to enter a declaratory judgment that the initiative fails to meet the constitutional requirements for inclusion on the ballot because it exceeds the scope of the legislative powers conferred by article IV, part 3, section 18 of the Maine Constitution.  Because, according to the Secretary of State, ballots for the November 2020 election need be printed starting at the end of this month, the mandate of this opinion will issue five days after the date it is published, with any motion for reconsideration to be filed within that time.  *See* M.R. App. P. 14(a)(2), (b), (c).

[¶39]  As we have noted, in the trial court and indeed during much of his oral argument on this appeal, the Secretary of State has opposed the issuance of injunctive relief that would enjoin him from including the initiative on the ballot.  Ultimately, however, counsel for the Secretary stated that if we were to conclude that the initiative is unconstitutional and cannot be submitted to the electors for popular vote—which is precisely our clear holding today—on his own accord, he will not include the initiative on the ballot.  Based on the Secretary of State's clarification of his position, we are confident that he "will comply with the law once it is declared" and prevent the invalid initiative from being placed on the ballot.  *Great N. Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 64 n.21, 770 A.2d 574.  Thus, we see no need for the issuance of injunctive

relief. *See Littlefield v. Town of Lyman*, 447 A.2d 1231, 1235 (Me. 1982) (holding that injunctive relief against a municipal planning board was "unnecessary" when we remanded for the trial court to enter a declaratory judgment that a specific version of an ordinance applied and there was "no evidence suggesting an unwillingness on the part of the Board to accept a judicial determination of that question").

The entry is:

> Judgment vacated. Remanded for the Superior Court to enter a declaratory judgment that the initiative fails to meet the constitutional requirements for inclusion on the ballot because it exceeds the scope of the legislative powers conferred by article IV, part 3, section 18 of the Maine Constitution. Mandate to issue five days after publication of this opinion, with any motion for reconsideration to be filed within that time.

John J. Aromando, Esq. (orally), Jared S. des Rosiers, Esq., Joshua D. Dunlap, Esq., and Sara A. Murphy, Esq., Pierce Atwood LLP, Portland, for appellant Avangrid Networks, Inc.

Gerald F. Petruccelli, Esq., and Nicole R. Bissonnette, Esq., Petruccelli, Martin & Haddow, Portland, for appellant Maine State Chamber of Commerce

Sigmund D. Schutz, Esq., Anthony W. Buxton, Esq., and Robert B. Borowski, Esq., Preti Flaherty Beliveau & Pachios LLP, Portland, for appellant Industrial Energy Consumer Group

Aaron M. Frey, Attorney General, and Phyllis Gardiner, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for cross-appellant Secretary of State

David M. Kallin, Esq., Adam R. Cote, Esq., and Elizabeth C. Mooney, Esq., Drummond Woodsum, Portland, and Paul W. Hughes, Esq. (orally), and Andrew Lyons-Berg, Esq., McDermott Will & Emery LLP, Washington, D.C., for cross-appellants Mainers for Local Power and nine Maine voters

Christopher T. Roach, Esq., Roach Ruprecht Sanchez & Bischoff, P.C., Portland, for appellee NextEra Energy Resources, LLC

Timothy C. Woodcock, Eaton Peabody, Bangor, for amici curiae Mark N. Dion and Kenneth C. Fletcher

James L. Costello, Esq., and Rebecca Gray Klotzle, Esq., Curtis Thaxter LLC, Portland, for amici curiae former commissioners of the Maine Public Utilities Commission

Dmitry Bam, amicus curiae pro se

Orlando E. Delogu, amicus curiae pro se

Cumberland County Superior Court docket number CV-2020-206
FOR CLERK REFERENCE ONLY